*Hartford,*
June, 1831.

Hollister
*v.*
Goodale.

HOLLISTER *against* GOODALE.

To effect a valid attachment of goods, the officer must have the *actual* possession and custody of them, in contradistinction to a constructive possession, which, on a sale, as between vendor and vendee, would be sufficient.

Therefore, where an officer having a writ of attachment, went to the carriage-house of the debtor, containing a barouche ; and the door being fastened by a padlock, he obtained the key, and unlocked the door, declaring, at the same time, that he attached the property within ; but before he had actually touched the barouche, another officer having another writ of attachment, sprang in and seized it; it was held, that the acts of the first-mentioned officer, previous to such seizure by the other, did not constitute an attachment of the barouche.

THIS was an action of trespass for taking and carrying away a barouche and harness.

The cause was tried at *Hartford, February* term, 1831, before *Peters,* J.

The claim of the plaintiff for the harness, was abandoned at the trial ; and the controversy regarded the barouche only. Both the plaintiff and the defendant were constables of the town of *Glastenbury,* and claimed to have taken this property, under different writs of attachment, issued against *Henry Benton ;* and the issue turned on the priority of service.

On the part of the plaintiff, it was claimed, that the barouche was in *Benton's* carriage-house, the door of which was fastened by a padlock ; that the plaintiff, having lawfully obtained the key, went to the carriage-house, unlocked the door, and attached the barouche, declaring, that he attached all the carriages and harnesses in the carriage-house ; and that while he was attempting to remove the barouche, the defendant forcibly took it from his possession, and afterwards sold it at the post.

On the other hand, it was claimed by the defendant, that he went with his attachment near the carriage-house, and concealed himself ; that when the plaintiff unlocked the door, the defendant first entered, and attached the barouche ; that the plaintiff neither attached the property, nor took possession of it ; and that sometime afterwards, the defendant returned to the carriage-house, and attached the harness and removed it.

The judge charged the jury, that if the plaintiff was at the carriage-house before the barouche was attached, by the defendant, and had a writ of attachment in his hands, and the key of the carriage-house in his possession, and was unlocking

the door, at the same time declaring, that he attached the property ; he thereby obtained the custody and possession of it ; and that this, without an actual touching of it, constituted an attachment of it.

The plaintiff obtained a verdict ; and the defendant moved for a new trial for a misdirection.

*Toucey,* in support of the motion, after remarking, that both officers had an equal right to enter the carriage-house and attach the property within it, by breaking or otherwise, and neither had the least priority of right, until one had acquired it, by a prior levy, contended, 1. That there could be no levy on such property, without entering the building. No levy can be made at a distance from, or without a building, on chattels shut up within it.

In the first place, the declaration of the plaintiff, " I attach," before the door was unlocked, was no levy. It could not then be made. The officer must be within reach to seize or remove the goods, or some part of them. An attachment, *ex vi termini,* implies a *touching—attingere.* The general legal import of the term, is the same. The exceptions are, where the subject of the process is a person, and he submits ; and where it is property, which, from its nature, cannot be got at. *Horner* v. *Battyn* & al. *Bul. N. P.* 62. *Naylor* v. *Dennie,* 8 *Pick.* 198. *Merrill* v. *Sawyer,* 8 *Pick.* 397.

Secondly, the possession of the key, was no levy. The lock was no *legal* obstacle to the attachment. It only rendered the property, in point of fact, more difficult of access. The plaintiff's object in obtaining the key, was, to facilitate his access. He had this advantage over his competitor. But this did not of itself constitute an attachment. If it did, the plaintiff, upon getting the key, might have returned, that he had attached the property in the carriage-house, without going into it ; and this would have held that property against a subsequent actual seizure and removal. This is too absurd to be claimed.

2. That the defendant's attachment was legal and sufficient. He had a right to enter the building by the door, to make service, whether he broke it, or another opened it ; and whether he entered with or without the knowledge or consent of any other person. This carriage-house was not the debtor's *castle.*

*Hungerford* and *Merrick,* contra, insisted, 1. That no ac-

*Hartford,*
June, 1831.

Hollister
*v.*
Goodale.

tual touching of property is necessary to constitute a valid attachment; but that it is sufficient that the officer, at the time, obtains the power and controul over it, and takes it out of the power and controul of the debtor. *Train* v. *Wellington,* 12 *Mass. Rep.* 495. 497. *Turner* v. *Austin,* 16 *Mass. Rep.* 181. *Naylor* v. *Dennie,* 8 *Pick.* 198. *Merrill* v. *Sawyer,* 8 *Pick.* 397. *Williams* v. *Cheeseborough,* 4 *Conn. Rep.* 356. *Whipple* v. *Foot,* 2 *Johns. Rep.* 418.

2. That in this case, the plaintiff, by getting the key of the carriage-house, had the power and controul over the carriage within it, and had it in his custody.

First, this was true in point of *fact;* the property being so situated, that the only access to it was by means of the key.

Secondly, a key, in the eye of the law, is a *symbol* of the property which it secures, and the possession of the former is considered as the possession of the latter.

HOSMER, Ch. J. The enquiries in the case, are, what constitutes a legal attachment; and whether on this subject, the charge was correct.

1. The word *attach,* derived remotely from the *Latin* term *attingo,* and more immediately from the *French attachér,* signifies to take or touch, and was adopted as a precise expression of the thing; *nam qui nomina intelligit, res etiam intelligit.*

The only object of attachment is to take out of the defendant's possession, and to transfer into the custody of the law, acting through its legal officer, the goods attached, that they may, if necessary, be seized in execution, and be disposed of and delivered to the purchaser. From both these considerations it is apparent, that to attach is to take the *actual* possession of property.—Hence, the legal doctrine is firmly established, that to constitute an attachment of goods, the officer must have *the actual possession and custody.* It was laid down in these express words, by Ch. J. *Parsons,* in *Lane* & al. v. *Jackson,* 5 *Mass. Rep.* 157. 163. and by Ch. J. *Parker,* in *Train* v. *Wellington,* 12 *Mass. Rep.* 495. 497. Nor is there, so far as my investigations have enabled me to discover, a single determination opposed to the preceding principle.

The case of *Turner* v. *Austin,* 16 *Mass. Rep.* 181. decided, that no overt act, by the sheriff, was necessary to constitute an attachment of property, previously in his custody on another attachment. But this is entirely consistent with the principle

advanced. The sheriff already had the actual custody; and *Hartford,* mere form or ceremony, *for form's sake,* and not for the preservation of substance, can never be required.

It was likewise adjudged in *Denny* v. *Warren,* 16 *Mass. Rep.* 420. that an officer, who entered a store to attach goods, where there was no competition, received the key from the clerk, and locked up the store, having declared his intention to attach, had made a sufficient attachment. And in *Gordon* v. *Jenney,* 16 *Mass. Rep.* 465. the determination was to the same effect.

So in *Naylor* v. *Dennie,* 8 *Pick.* 198. it was decided, that inaccessible goods, covered up in the hold of a ship, were attached, by the officer's going on board, and leaving a keeper to take care of them; and in *Merrill* v. *Sawyer,* 8 *Pick.* 397. that hay in a barn was duly attached, by putting a notification of the attachment on the barn door.

Now, in all these cases, the court went on the principle, that the actual possession and custody was necessary to constitute an attachment; although there being no race for priority of attachment, they held that to be the actual custody and possesion, which, perhaps, was constructive possession only.

The analogous cases all demonstrate the necessity of actually taking the property. This is the established law concerning the levy of executions; that is, the property levied on is actually taken into the custody of law. So when an attachment or execution is levied on the body, it is effected, by a corporal seizing or touching of the body, and thus putting it in the cutody of the law; (3 *Bla. Comm.* 288.) or by what is tantamount, a power of taking possession and the party's submission thereto. *Genner* v. *Sparkes,* 1 *Salk.* 79. *Horner* v. *Battyn, Bul. N. P.* 62. But if the person do not submit, (and this dead property cannot do) the body must actually be seized.

2. The question now arises, in view of the preceding facts and principles, whether the charge to the jury was correct.

That the plaintiff was at the door of the carriage-house, with a a writ of attachment in his hand, only proves his intention to attach. To this no accession is made, by the lawful possession of the key and the unlocking of the door. Suppose what does not appear, that the key was delivered to him, by the owner of the barouche, that he might attach the property; this would be of no amount. He might have the constructive possession, which, on a sale, as between vendor and vendee, would be suf-

*Hartford,*
June, 1831.

Hollister
*v.*
Goodale.

ficient; but an attachment can only be made, by the taking of actual possession. As little importance is attached to the unlocking of the door, and the declaration that the plaintiff attached the carriage. This was not the touching of the property, or the taking of the actual possession. The removal of an obstacle from the way of attaching, as the opening of the door, is not an attachment, nor was the verbal declaration. An attachment is an act done; and not a mere oral annunciation. From these various acts, taken separately or conjointly, the plaintiff did not obtain the possession and custody of the barouche, and therefore, he did not attach the property.

On the contrary, if the facts contended for, by the defendant, were proved, his defence was complete. Between two officers having separate attachments, there was a race for priority. They both had arrived at the carriage-house; and, so soon as the door was opened, the defendant outstripped his competitor, and seized on the barouche. By this act, he had the actual possession, and was successful in his intended prior attachment.

I would, therefore, advise a new trial of the cause.

Daggett and Williams, Js. were of the same opinion.

Peters, J. was also inclined to concur, though he was not quite satisfied, that the charge was wrong.

Bissell, J. was absent.

New trial to be granted.