ORLEANS,
March,
1832.

Skinner et al.
vs.
Watson et al.

————~~⟨E~~————

JOSIAH NEWTON *vs.* HENRY ADAMS, and BOHAN SHEPARD.

Where a sheriff attaches property, and returns that he left a copy of the writ at the last and usual place of abode of the defendant, without stating in what situation such copy was left, the service is defective, and the suit abatable; but the attachment is valid, as against subsequent creditors, and trespass may be sustained by virtue of the lien.

If an officer, attaching goods in a building, lock up the building and take the key into his possession, it is a sufficient taking possession, as respects subsequent attachments; and if the officer fail to secure the property effectually, and the attorney or creditor, acting in his behalf, proceed to do so, before any subsequent attachment is made, his attachment is valid.

Although the officer, by taking exclusive possession of the building and excluding the owner, might be regarded as a trespasser *ab initio,* as respects the owner, yet the attachment is valid.

This was an action of *trespass* for taking and conveying away certain articles of personal property, described in the declaration. Plea, *not guilty.* On trial in the county court the plaintiff offered in evidence a writ of attachment and the officer's return thereon indorsed, dated November 10th, 1827, together with the record of a judgement and execution in favor of the *Bank of St. Albans,* against one Anson Field, which writ was served by the plaintiff, as constable of St. Albans, by attaching the property described in the declaration. The return on the writ was as follows:

" *St. Albans,* November 10th, 1827. I then served this writ by attaching a certain piece of land, lying in the village of St. Albans, being the same which said Field purchased of Benjamin Swift, and more particularly described in the deed from Swift to Field, on which said Field has erected a Brick shop; also, at the same time, I attached the following articles of personal property, to wit, 3 bureaus, 1 book case and drawers, 1 writing desk, 8 cherry tables, 1 maple *do.* 2 pine *do.* 4 stands, 3 chests, 1 cradle, 6 low post bedsteads, one field bedstead, 3 high post *do.* 67 unfinished bedstead posts, 1 crick bedstead, about two thousand feet of pine boards, a quantity of furniture trimmings, and butts and screws, and shingle nails, one paint brush, about two thousand feet of cherry, maple and birch boards, lying in Catlin's shed, and one bay mare, all turned out to me by the plaintiffs, as the property of the defendant; and on the same day, I left a true and attested copy of this writ, with my return hereon, thereon endorsed,

FRANKLIN,
January,
1832.

Newton
vs.
Adams et al.

and a list of the property attached, with the town clerk of St. Albans ; and I have caused the substance of this writ, and return thereon, to be recorded in the town clerk's office in St. Albans : and I also left another true and attested copy of this writ with a list of property attached, at the last and usual place of abode of the defendant.

Attest, <em>J. Newton, Constable</em>."

To the admission of this evidence the defendants objected, and insisted, that the officer's return on the writ was so defective that the plaintiff acquired no right to said property by virtue of the attachment, as against the defendants, who were subsequent attaching creditors. This objection was overruled, and the evidence admitted. The plaintiff then proved, that on Saturday, the 10th of November, 1827, about 11 or 12 o'clock in the forenoon, he commenced the service of said writ by attaching the property in question, and finished the service about 12 or 1 o'clock the same day. It appeared in evidence that Field left St. Albans, for the purpose of going to Burlington, on Tuesday or Wednesday previous to the attachment, but had absconded ; that at the time he left St. Albans, he occupied a building in the village of St. Albans, two and a half stories high, for a cabinet work-shop and ware-house. The lower room was occupied for a work-shop, and the two upper rooms for cabinet-ware and lumber. That when Field went away he left three hands at work for him in said shop ; that when the plaintiff attached the property in question, the principle part of it was in the rooms on the second floors ; but some part of it was removed from the room on the first floor to the room on the second ; that he fastened the windows to the room on the second floor by nailing them down, and the outside doors to the second floor, by nailing a piece of board across the same, and went away, leaving the trap door from the second floor to the first unfastened, and Field's hands at work in the lower room, as usual ; that said hands continued at work until Saturday night. The plaintiff had no licence or authority to take possession of, or to fasten up, any part of said building at any time, from Fields, or any person having authority from him, but claimed the right to do it to secure the property attached. No other removal of said property was made than as above stated, and there was sufficient time, on the day the property was attached, to have removed it to some other building. On Sunday evening, the 11th of November, Messrs. Davis and Gadcomb, the former the attorney, and the latter a director of the Bank, without any directions of the plaintiff, refastened the windows and doors to the second floor, and put

FRANKLIN,
January,
1832.

Newton
vs.
Adams et al.

a lock on the door of the lower room. On Monday morning early, the 12th of November, *Adams*, as attorney for John Taylor, and *Bohan Shepard*, then sheriff's deputy, went to said building, and broke in a part of the door to the second floor, and took and carried away a part of the property in question, by virtue of a writ of attachment in favor of John Taylor against said Fields. At the time the defendant, *Adams*, was breaking the door to get into the shop, Mr Davis, the attorney, informed him the property in that room was attached. It further appeared in evidence, that on Saturday afternoon, Hoyt and Bixby, creditors of Field, called on the plaintiff and the Bank attornies and directors, and inquired whether they had been attaching the property of Field? who at first declined giving any information on the subject; but soon after stated they had sent money by Field to the Bank of Burlington, and he had not left it there, and they had attached his property; but if Field had paid over the money, they did not wish any thing to be known about it.

The defendants insisted, and requested the court to charge the jury, 1st. that the plaintiff had attained no right to the property in question by virtue of said writ of attachment, *Bank of St. Albans* vs. *Field*. 2d. That the property in question was left in such a situation by the plaintiff, that it was liable to be taken by a subsequent attaching creditor. 3d. That the declarations of plaintiff, and Bank attorneys and directors, to Hoyt and Bixby, were evidence that they intended to keep said attachment secret, and if so, the attachment was fraudulent and void, as against a subsequent attaching creditor. But the court directed the jury, that on the facts aforesaid, the attachment made by the plaintiff was sufficient to hold the property against a subsequent attaching creditor, and that the declarations made by the plaintiff, attorneys and directors of the Bank, to Hoyt and Bixby, had no tendency to deceive or mislead any creditor, and especially the creditor for whom the defendants acted; and would not affect the plaintiff's right to recover. To the decision of the court in admitting the evidence, as aforesaid, and their refusal to charge the jury, as requested, the counsel for the defendants excepted; and a verdict being returned for the plaintiff, and judgement rendered thereon, the cause was ordered to the Supreme Court.

*Smalley and Adams, for defendants.*—1. The title of the plaintiff to the property in question, depends entirely on the validity of the attachment, in the suit *Bank of St. Albans* vs. *Field*. If that

FRANKLIN, writ was not legally served, he aequired no lien.   Consequently,
*January,*
1832.   this attachment fails.    The officer,in his return on that writ, says,
_____   that he left a true and attested copy  of the writ, with a list of the
Newton
*vs.*   property attached, at the last and usual place of abode  of the de-
Adams et al.
fendant ; but whether he left it in the fire, or under the floor, or
what other place, he does not  inform us.    All that he states in
his return may  be strictly  true, and yet,  he may have left  it in
such a situation that  the debtor  would never find it.    The object
of leaving a copy is to give  notice to the debtor.    But this object
would be  entirely defeated, if  the officer  is at liberty to hide or
burn the copy.—*Stat.*  64,  *s.* 26 ;  *Marvin* vs.  *Wilkins,*  1 *Aik.*
*Rep.* 110.    In the case cited, the  officer says he  left a  copy of
said writ lying on a table, with a copy of his return thereon.   Noth-
ing is said about the usual abode of the defendant, nor  on whose
table.    Such a service, the court say, is no service at all.    What
difference does it make, whether  the copy  is left at a neighbor's
house, or hid under the floor of the debtor's.    If it is said the court
will  presume the  officer left the copy in a  proper situation, at the
debtor's abode.    Why not presume, when the officer says he left a
copy at a house, that he left  it at the debtor's house.

2.  If the first position cannot be sustained, yet as the officer did
not take  and keep actual possession of the property, but suffered
it to remain in possession of the debtor, until it was taken  by the
defendants, who were subsequent attaching creditors, he acquired
no right to the property  as against them.    On  this part of the
case the inquiry is,  in whose  possession was the  property when
taken by the defendants ?  The property was in the debtor's buil-
ding, and, of course, in his possession,  unless the  plaintiff  or his
agents, had actual, or constructive, possession of the house.    We
believe it will not be pretended that the plaintiff or his agents had
the actual possession of the house when the goods were taken  by
the defendant.    If  he had not,  the  only inquiry is,  had he  the
right of  possession ?

The plaintiff attaches the  property, and, without  permission
from the debtor, puts it into one of the rooms of the debtor's buil-
ding, and fastens  the  outside door  and windows to that  room,
leaving a communication between that room,  and  the rest of  the
building then in possession of the debtor, and other out side doors
open.    In this situation the plaintiff left the building and the prop-
erty attached.    Did the plaintiff by these acts acquire the  right
of possession to the  room where the property was left ?  This act
of  the plaintiff in taking possession of the room, and fastening it,

FRANKLIN,
January,
1832.

Newton
vs.
Adams et al.

was clearly illegal, and trespass might be sustained against him by the debtor.—*Fullerton* vs. *Mack*, 2 *Aik. Rep*, 415. Although the officer had a right to go into the building, and continue there a sufficient time to remove the property, yet he had no right to lock up and leave the building, more especially, as he had ample time to remove the property.—*Aikinhead* vs. *Blades*, 1 *C. L. Rep.* 75. The question then presented is this: The plaintiff commits an unjustifiable trespass on the debtor's house, locks it up, and leaves it. Now, who has the right of possession to the house, the officer who locks it up illegally, or the debtor? If after the officer had left the house, the debtor had gone into the room thus locked up, could the officer have maintained trespass against him? If he could, the officer had the right of possession: if he could not, the right of possession was in the debtor. If, then, the officer have not the actual possession, and the debtor had the right of possession, by what rule of law can it be said the officer had possession of the house. If he had not the possession of the house, he had not the possession of the goods; and if he had not the actual or constructive possession of the goods, his lien, attempted to be created by the attachment, was vacated.—*Carrington et al.* vs. *Smith*, 8 *Pick.* 419.

The acts of Gadcomb and Davis in refastening the house, on Sunday evening, cannot alter the case, even if it had been done by the direction of the officer; for if he acquired no right to the possession of the house, by committing a trespass in fastening up the room, he could not acquire any right by committing a trespass in fastening up the whole house.—*Taintor* vs. *Williams*, 7 *Con. Rep.* 271· But if these subsequent acts would have varied the case, if performed by the directions of the plaintiff, yet, as they were done without his direction, by persons who had no right to interfere in the business, they cannot alter the case. The officer could not be made a traspasser by their acts, done without his consent. Neither can he derive any benefit from them. This was a part of the transaction to which he was not a party, and he cannot, in any way, be affected by it.

*Aldis and Davis, for the plaintiff*.—I. The plaintiff contends that the officer's return is sufficient, at least, for the purposes of this action.

1st. If the return of the officer had stated that a copy was left in the manner which the defendants say ought to have been done, still, Field, having absconded, would have had no notice of the

FRANKLIN,
January,
1832.

Newton
vs.
Adams et al.

suit, and no judgement could have been rendered till an actual notice had been given, or a publication have been made agreeably to the statute. There could have been no necessity of being particular with respect to the manner of leaving the copy.

2nd. But if the court should be of the opinion, that the return on the writ is defective, and insufficient as to Field, yet it is contended that his subsequent appearance in the suit cures all defects as to service. Defects of service ought to be pleaded in abatement, and Field not having done so, the judgement is valid to all intents and purposes ; and no matter of abatement can now be inquired into.

3rd. The only object of leaving a copy of the writ with the defendant, or at his usual place of abode, is to give him notice of the suit, and it is not necessary, in order to give others notice of the attachment ; for that is made notorious by the officer's taking possession of the property. The law does not suppose that creditors will enquire of their debtors to know whether their debtors' property has been attached ; but they are to get the information by enquiring at the place where the property has been kept, or of the person who has possession thereof. If, therefore, the copy which the statute requires to be left with the debtor, or at his place of abode, is not to give notice to other attaching creditors, they cannot claim to have the attachment made void on the ground that the return does not show that such copy was left, so as to give the debtor legal notice of the suit ; especially if it appears that in all other respects the service was good.

4th. It is a settled principle of law, that the defendant in the case of attachment of property, may waive the copy and accept service of the writ, which he could not do if the copy, which is required to be left with him, is for the benefit of other creditors. It has always been deemed sufficient, if the officer serving the writ leave a copy with the defendant at any time twelve days before court, notwithstanding the attachment might have been a long time before ; and it has never been considered that an intervening attachment could hold the property in preference to the first.

II. It is considered by the plaintiff, that the case does not show any fraud in making the attachment, nor that it was done in a secret manner, nor that the creditors ever refused when enquired of, to state candidly that the goods had been attached. They were not obliged to publish the fact to the world, nor make it any more public than the statute required, by leaving the copy with the

town clerk, and the officer's seizing and taking possession of the property, as was done in this case.

FRANKLIN,
January,
1832.

Newton
vs.
Adams et al.

III. 1st. It was not necessary that the goods should have been actully removed from the place where they were attached. Other acts of notoriety, which may notify the creditors that the goods are in the custody of the law, may be equivalent to a removal.— *Vide Train* vs. *Wellington*, 12 *Mass.* 495 ; *Baldwin* vs. *Jackson, do.* 131.

2nd. The case shows that the goods when attached by the plaintiff were all secured in a room of the building where they were found, the doors and windows fastened ; that a lock was afterwards put on the outside door, by one of the creditors, and that the defendants had actual notice of the plaintiff's attachment. These facts show that the goods were actually seized and taken possession of by the plaintiff, were in his possession at the time the defendants took them away, and that all this was known to them at the time the trespass was committed.

3rd. To constitute an attachment of goods in a shop or store, it is sufficient if the officer after seizing the property, leave it in the building, and fasten the doors, by locking them, or otherwise securing them, as this would be sufficient notice to creditors that the goods had been attached, and were in the custody of the law. *Vide Denny* vs. *Warren*, 16 *Mass.* 420 ; *Gordon* vs. *Jenny*, 16 *Mass.* 465.

4th. It cannot be said that the property attached was left in the possession of the debtor, as he had absconded.

PHELPS, J.—The plaintiff's title to the property in question, and, of course, his right to recover, depends upon the validity of the attachment of the property, made by him, as constable of St. Albans, at the suit of the *Bank of St. Albans* against *Anson Field*. The defendants contest its validity, upon two distinct and independent grounds. The first is, that the plaintiff's return of his doings is so defective as to render the attachment nugatory, and the second, that he neglected to take that possession of the property which the law requires, in order to give validity to his lien, as against the creditors of Field, one of whom the defendants represent.

That the return is defective, must be conceded. A return, that he left a true and attested copy of the writ, at the last and usual place of abode of said Field, without stating the situation in which such copy was left, clearly does not shew a compliance

FRANKLIN,
January,
1832.

Newton
vs.
Adams et al.

with the statute directing the mode of service.    See *Rev. Laws,* p. 64; *Marvin* vs. *Wilkins,* 1 *Aik. Rep.* 110.

But an important question here arises, whether this service is to be considered as absolutely void, or voidable merely.    In the former case, no after proceeding can give it validity, but in the latter, the defect may be supplied, cured, or waived.

The object of the service was two fold, viz., to obtain security on the property, and to give notice to the defendant; but the purpose of leaving a copy with the defendant is to give notice merely.    The attachment is effected by seizing the property; and from necessity this is prior to giving notice to the defendant. The title of the officer must be good in the interim; and, of course, trespass might be sustained for the taking, without shewing a copy to have been previously left.    If no copy be left within the time allowed for serving the writ, the attachment might be considered as abandoned: but the attachment is certainly good, if a copy be left with the defendant at any period within that time.    The law requires but twelve days notice in such cases, and it makes no distinction, in this respect, between cases where property is attached and others.    The most which could be contended for, is, that a copy should be left within a reasonable time, in order to give notice to other creditors.    What would be the effect of unnecessary delay in this respect, it is not necessary now to decide, as the case furnishes no ground for such an objection.

Supposing it necessary, however, that a copy should have been left in this case, in order to protect the attachment, the question recurs, what consequence is attached to the defect in this return?

There can be no doubt that the officer might have been permitted, after the entry of the suit, to amend his return, and to add, if the facts would warrant it, all that was necessary to render his return conclusive evidence of notice to the defendant.    It would also be competent for the plaintiff, under certain circumstances, to prove the actual reception of the copy by the defendant.    And, even if no actual notice had been given, it would have been proper for the court to have continued the action, and directed notice, as provided by statute.    There are many cases, where the court may proceed to judgement, although there has been no actual notice, leaving the party to his remedy by writ of review.    In all such cases the property attached is holden to respond the judgement.

So too, the defect might be cured by the defendant's appearance and pleading to the action.    See 1 *Aiken's* 110.    For

aught we know, the defendant, Field, might have been out of the state, at the time of service, and the case continued agreeably to the statute ; and for aught we know, he appeared. and answered to the suit.* At all events, this subject of notice was under the control of the court, to which the writ was returnable ; and they having proceeded to judgement, it is to be presumed, that the defect was cured or supplied. Their proceedings are to be presumed regular and valid, and are not to be impeached in this collateral way. The result is, (and in this we are all agreed,) that the service in question is valid to create a lien on the property, and is a sufficient title to sustain the action.

It is further contended, that the plaintiff did not take such possession of the property attached as the law requires, to protect it against subsequent attachments.

That it was necessary for him to take possession of the property, is not questioned ; but it is insisted by the plaintiff, that the acts done by him did amount to such possession as the law requires. All that can be necessary, in such cases, is that such possession shall be taken, as will give sufficient notoriety to the attachment. This is done when the property is so far in the custody of the officer, as necessarily to exclude acts of dominion over it by others. In this case, a part of the property was left in the room where it was found, and a part was removed from another room and deposited there. The plaintiff proceeded to fasten the doors and windows of the room ; and had he done so effectually, there would have been no question on this point. It seems, however, that from some cause, and, perhaps, from accident, one avenue to the room was not secured. We are not prepared to say, that such an omission would render the attachment fraudulent. Had this been done with a view to give the former owner access to it, the case would have been different ; but, in this case, it does not appear that he was aware of the existence of the trap door, and such an avenue to the room might hastily have escaped his notice. He certainly attempted to secure the property within his own control ; and to predicate fraud upon a mere oversight, would be a novelty in jurisprudence. Nor can it with propriety be insisted, that an officer is bound, in order to avoid the implication of fraud, to secure the property effectually against thieves or trespassers. The very idea, that the action of trespass may be supported by an

*It appears from the record, that Field did appear by attorney and answer to the suit. This circumstance not having been mentioned in the bill of exceptions, it probably escaped the attention of the Court at the time the opinion was delivered.—*Ed,*

FRANKLIN,
*January*,
1832.

Newton
*vs.*
Adams et al.

FRANKLIN,
January,
1832.
———
Newton
vs.
Adams et al.

officer, by virtue of his lien, presupposes that the property may lawfully be left by him in a situation to be eloigned by a mere act of trespass. Had Field been present, or in possession of the building, or in a situation to exercise acts of ownership over the property, it might have varied the case. But he had absconded; and, although some of his servants were in another part of the building, yet it does not appear that they had, either before or after the attachment, assumed any control or authority over the property in question.

But, admitting that the plaintiff did not originally take a sufficient possession, yet we all agree, that, if he did subsequently, and without any intervening attachment, acquire a sufficient possession, the rule of law is satisfied, and his attachment is valid.

It appears that the day following the attachment, the attorney of the creditor proceeded to take the exclusive possession of the building, and to exclude all access to the property. As this was done, evidently in behalf, and for the benefit, of the plaintiff, and with a view to protect his lien, we consider, that, although the act was purely voluntary on the part of the attorney, the plaintiff is entitled to the benefit of it. It having been done professedly under his authority, he was at liberty to sanction the proceeding, more especially, as there was a sort of privity or connexion between them as agents of the creditors.

At the time of the attachment by the defendants, the building was in the exclusive possession of the plaintiff or his agents. All others were excluded, and the defendants found it necessary to break the door, in order to get access to the property. Whatever, therefore, might have been the previous state of things, the plaintiff had, at the time of the attachment by the defendants, an actual unequivocal possession of the property.

It is urged that the plaintiff's possession is to be considered unlawful, inasmuch as the proceeding in taking possession of the shop, is contended to be a trespass; and authorities are cited to show, that an officer is liable in trespass, for unlawful acts committed under such circumstances. It is admitted, however, that the original entry of the building for the purpose of making the attachment, was lawful; and the supposed trespass consists in subsequently excluding others. Without stopping to enquire, whether an attachment effected by breaking the dwelling of the defendant, which is under the protection of the law, would be valid or not, it is sufficient, for the purpose of the present case, to remark, that the attachment, being originally lawful, could not be affected by

any subsequent act of the plaintiff of the character mentioned. Although the subsequent unlawful act (if unlawful it was) might, by fiction of law, render the officer a trespasser *ab initio*, yet this fiction of law would not extend to the lawful official act in which the creditors were interested.

The judgement of the county court is affirmed.