## JAMES LYON *v.* AZARIAH ROOD.

To constitute an attachment of personal property, it is necessary the officer should, either by himself or his servant, take and maintain the actual custody and control of the property.

This may be done, without touching the property, by such means as will exclude all others from the custody, or will give timely and unequivocal notice of the custody of the attaching officer.

One who is a creditor to the full amount of the value of property, has the same right to secure himself, by contract, that he has by attachment.

If he is not a creditor to the full amount of such value, still, if he purchase for an adequate consideration, and without any intention to defeat or delay any of the creditors of the vendor, his purchase cannot be impeached by such creditors, even if the vendor, were, at the time, threatened with attachments and this known to the vendee.

TRESPASS, for a horse and harness. Plea, not guilty. Issue to the country.

Upon the trial in the county court, the defendant admitted the taking of the property, and offered in evidence a writ of attachment in favor of George W. Cutter against one James Lawrence, and insisted, that, as-sheriff of Addison county, he took the property in question as the property of said Lawrence, by virtue of said writ.

The plaintiff admitted, that, when said writ issued, the horse and harness belonging to Lawrence.

The plaintiff offered evidence tending to prove, that on the day when the defendant took the property, he met Lawrence on the bridge in Middlebury, who was drawing a load

ADDISON,
January,
1840.

Lyon
v.
Rood.

of goods with said horse, and another, and the harness in question; that the defendant beckoned to Lawrence to stop, who did so; that the defendant then enquired about the horse and asked Lawrence if he owed Cutter, and, upon receiving an affirmative answer, the defendant told Lawrence that Cutter thought of troubling him, and that he had better go and see Cutter; that no writ was shown or mentioned, and nothing was said by the defendant about attaching the property; that Lawrence then sent a boy with the load of goods, and went himself to see Cutter; that Cutter told Lawrence all he wanted was security; that thereupon Lawrence returned to the end of the bridge, where he met the boy with the horses and wagon; that the defendant soon went there and the conversation was renewed, between him and Lawrence, in relation to the debt due Cutter and the defendant proposed that Lawrence should go to Cutter's store and give a note, with security, for the amount due Cutter; that Lawrence then offered to turn out the horse in question to Cutter, as security, but the defendant said that Cutter did not want the horse, and again proposed that Lawrence should go to Cutter's store and secure him by giving a note; that, thereupon, Lawrence drove the horses and wagon to Cutter's store and left them in the street, near the door of the store; that the defendant walked to said store and entered the store with Lawrence, and the term of credit which Cutter would give to Lawrence being agreed upon, a note was written for Lawrence to procure to be signed by some one as surety with him; that Lawrence took the note and went out to get a signer and told the defendant that he, Lawrence, would drive the horses to Cutter's store; that said horses and wagon were left standing in the street where Lawrence left them and the defendant remained in said store.

It appeared that a part of the property in question was purchased, by Lawrence, of the plaintiff and had never been paid for, and that Lawrence, after leaving the store with the note, sent to the plaintiff to come to him, and, on plaintiff's arrival, Lawrence executed a bill of sale to the plaintiff of the property in question; that, immediately after, the horses and wagon were, by the plaintiff's directions, driven from the place where they were left by Lawrence, to the place

where the horse, not owned by Lawrence, belonged, and that, while the plaintiff and his servant were unharnessing the ·horses, the defendant took the property in question out of plaintiff's possession.

It further appeared that the defendant never showed any writ, nor told Lawrence that he had one, and never said any thing about attaching the horse and harness, and never put his hand upon the property, nor had any actual possession of it.

The defendant introduced evidence tending to prove, that, at the time the bill of sale was executed by Lawrence to the plaintiff, the plaintiff had notice that the defendant had attached, or was about to attach, the property in question on said writ in favor of Cutter.

It also appeared that Lawrence made an attempt to get the note signed.

From this evidence, the court charged the jury that if the defendant stopped said Lawrence on the bridge, with the horses, having the writ in his possession, *and with intent to attach the horse and harness*, and the actual taking of the property was suspended upon the proposition of the debtor to get security for the debt, yet, if the property was kept by the defendant, or by consent of the debtor, within the reach and power of the defendant, while the debtor was gone to procure the security, and the debtor, instead of returning with the security, sent for the plaintiff and executed the bill of sale, with a view to prevent the attachment, the attachment would hold in preference to the sale, unless there was evidence that the defendant, in the mean time, had relinquished the *design* of *attaching*, although the plaintiff might have been a *bona fide* creditor of Lawrence. That, although, in a contest between two officers, with different processes, the case might be different, yet, an assignment, made to a favored creditor after the property had been placed in the power of the officer, under the circumstances of this case, and with a design to supersede the attachment, would be deemed fraudulent, especially if the proceedings of the officer had been delayed by a proposal to give security.

The jury returned a verdict for the defendant and the plaintiff excepted to the charge of the court.

*C. Linsley*, for plaintiff.

The case shows conclusively that there was no actual possession taken of the property by Rood. That he contemplated attaching the property, in case the note should not be satisfactorily signed, is probable. But to gain a priority over another creditor or a purchaser without notice, there must be actual and visible possession taken of the property. Any attempt to weaken the force of this general rule, which is now established and generally understood, should be firmly resisted. If the rule is infringed upon, where is the limitation to be fixed ? *Lane et al.* v. *Jackson*, 5 Mass. 163.

II. There is no destinction between creditors in acquiring a lien on their debtor's property. The creditor who goes without process, has as much equity as one who goes with. The one may coerce, the other can only persuade. In either case, no lien attaches without actual possession. *Actual possession*, then, is the true criterion of advantage, and he who first obtains this, has used the greatest diligence, for no diligence, short of actual possession, is recognized by the law in such cases. *Fitch* v. *Rogers*, 7 Vt. R. 403. *Newton* v. *Adams*, 4 Vt. R. 437.

III. It is wholly immaterial whether plaintiff knew that Cutter was about to attach. If the plaintiff, knowing that a creditor was about to attach, had volunteered to purchase the property to defeat the creditor, it would have been fraudulent. But, being himself a just creditor, he had the same rights that Cutter had, and Cutter, to obtain any advantage, must first have fixed his lien by getting actual possession. To constitute an attachment of personal property, at common law, there must be an actual taking of the property. *An intention to do so*, however strong, or however near it may apparently be to being accomplished, is wholly insufficient. *Hollister* v. *Goodale*, 8 Conn. R. 332.

*Starr & Bushnell*, for defendant.

1. It appears, from this case, that defendant, as sheriff, had the possession and control of the property after Lawrence left Cutter's Stone to get the note signed. The horses were left standing at the door of Cutter's store while Lawrence went to get the note signed, the defendant waiting at the store for the return of Lawrence with the note.

2. The horse was sent for by plaintiff after the assign-

ment made to him by Lawrence, and Lawrence did not return to the store. The defendant immediately pursued the property to Lyon's house and took it while they were unharnessing.

3. The plaintiff, as the case states, had notice, at the time the bill of sale was made to him, that the defendant had attached or was proceeding to attach the property. The property was not then in the possession of Lawrence, but was in the custody of the defendant, as sheriff. *Fitch* v. *Rogers*, 7 Vt. R. 403. *Newton* v. *Adams, et al.* 4 Vt. R. 445.

4. The facts, stated in the case, show that Lawrence submitted to the process and surrendered the property to the custody of the defendant and left it in his possession, and, in such case, any formal taking of the property by the officer was unnecessary.

The opinion of the court was delivered by

REDFIELD, J.—The facts, in the present case, do not seem to the court to be sufficient to constitute an attachment of personal property. But, as the case must go back for a further trial upon that point, it becomes necessary, in some degree, to consider what is necessary to constitute such an attachment. From the fact that in England, they have no law for attaching property upon *mesne* process, and, that judgments in that country create a lien upon property, without the necessity of a formal levy of the execution, questions of this character do not arise there. The cases in the English courts, most analogous to the present case, are those which concern the arrest of the body.

In an anonymous case, K. B. 1701. 7 Modern, 8 ; Holt, Ch. J.—says, " If a window be open, and a bailiff put in his hand and touch one, against whom he has a warrant, he is thereby his prisoner." In another anonymous case, K. B. 1675, reported in 1 Vent. 306, it is said, " A bailiff, having a warrant, perceiving a debtor's hand out of the window, seized it; and the court held it a sufficient arrest." In *Gennner* v. *Sparks*, 6 Modern, 173 ; S. C. 1 Salk. 79, it was held, there was no arrest, because the officer had not the defendant *in his power*. In *Horner* v. *Battyn*, Buller's N. P. 62, the arrest was held to be good, although mere words

were used, because the debtor did submit to the arrest. In the case of *Williams* v. *Jones,* Ca. Temp. Hard. 301 ; S. C. 2 Strange, 1049, Lord Hardwicke, Ch. J.—says " It does not follow an arrest cannot be made without touching the person, for if a bailiff comes into a room, and tells the defendant he arrests him and locks the door (upon him), there is an arrest, for he is in custody of the officer." And in the great case of *Blatch* v. *Archer,* Cowper, 63, Lord Mansfield says, " That the officer must be the *authority* that arrests, is certain, but he need not be the hand that arrests, nor in the presence of the person arrested, nor actually in sight, nor in any prescribed distance." But I take it he must, at the very time, be in pursuit of the very object, and the person making the actual arrest must be under his direction and control.

From the foregoing cases, I infer, that to constitute an arrest of the person, the officer must be armed with legal process, he must have the custody and control of the defendant's body, at least potentially, and he must claim that control by virtue of the process, and unless it is submitted to, must put it in actual exercise. The same rule, with such modifications as the different subject matters may require, will apply to the attachment of personal property. It is not perhaps necessary, in any case, that the officer should actually touch the property, but, to constitute a legal attachment, he must have the custody or control of the property, either by himself or his servants, in such a way as either to exclude all others from taking the custody of the property, or, at least, to give timely and unequivocal notice of his own custody. Hence, in *Lane et al.* v. *Jackson,* 5 Mass. R. 157, Parsons Ch. J.—says, " That to constitute an attachment of goods, the officer must have the actual possession and custody. And in *Train* v. *Wellington,* 12 Mass. R. 495, the same rule is adhered to, with this qualification, " not that every article must be taken hold of, but that the officer must be in view of the whole, with the power of taking them into his actual custody." In the case of *Denny* v. *Warren,* 16 Mass. R. 420, it was held that taking possession of the key of a store and declaring an intention to attach, was a sufficient attachment. The same rule is adhered to in the case of *Gordon* v.

*Jenny*, Ib. 465. In *Naylor* v. *Dennie*, 8 Pick. 198, it was decided, that goods, in the hold of a ship, might be attached by the officer going on board the ship and leaving a keeper to take care of them. And again, in *Merrill* v. *Sawyer*, 8 Pick. 397, it was decided that hay in a barn was sufficiently attached, by putting a notification of the attachment on the barn door. There is the case of *Hollister* v. *Goodale*, 8 Conn. 332, where the court decided that if one officer have the key of a carriage house and go and open it and declare that he attaches a carriage standing therein, and at the same time another officer rushes in and first gets the manual custody of the carriage, he will hold it, as having first legally attached it, which seems not to accord, in principle, with the other cases.

In regard to the last case referred to, I can only say, that, if it is *correctly reported*, it must have been *wrongly decided*, and Mr. Justice Peters, who tried the case at the circuit, and ruled the law the other way, must have been a man of very singular modesty and urbanity to have said that " he was inclined to concur, (with his brethren) though not quite satisfied that the charge was wrong." If the case were not decided by a very learned court, and sustained by a very elaborate argument from the chief justice, we should hardly have considered it deserving of so much consideration. From what has been said, it will beo bvious that there is nothing, in the present case, tending to show any attachment of the property by defendant, previous to the sale and delivery to the plaintiff. How far the sale to the plaintiff might be impeached, it is perhaps not necessary to be now decided. It is well settled, that if the plaintiff was a creditor to the full amount of the purchase, he had the same right to secure his debt by purchase, or other contract, that he would have by attachment. If the plaintiff was not a creditor to the full amount of his purchase, but the purchase was made upon adequate consideration and without any intent to defeat or delay any of the creditors of the vendor, it cannot be impeached by such creditors, even if the vendor was, at the time, threatened with attachments and this known to the plaintiff. This last point was decided by this court in a case in Windsor county, not yet reported.

Judgment reversed and new trial granted.