Slate *v.* Barker et al.

GEORGE SLATE *v.* WILLIAM P. BARKER & OTHERS.

*Attachment of personal property.*

Where an officer who was in the possession of a room and had permitted W. to store certain personal property in the same, and writs were put into his hands against W., and the officer attached the property in said room, and resumed exclusive possession of the room, and fastened the outer door so as to cut off all public access to it, though he neglected to fasten an inner door leading to a wood room,—*Held*—that the attachment was valid and sufficient to perfect the officer's right to the property.

And if W. had a joint possession of the room with the officer, when under the authority of the process in his hands, the officer terminated that possession by fastening the outer door to the room, it constituted a legal attachment, under the authority of *Newton* v. *Adams*, 4 Vt. 437.

TRESPASS for 40 stoves and certain other articles of personal property.

The case was referred under rule of court, and the referee reported in substance, the following facts:

That the plaintiff, who was a deputy sheriff for the county of Windham, on the second day of January, 1851, received sundry writs of attachment against one Robert W. Wiley; and that by virtue thereof the plaintiff attached the 40 stoves named in the declaration as the property of said Wiley. That judgment was confessed upon the suits on the fourth day of February, 1851, and the executions put into plaintiff's hands the same day, who on the same day made return on said executions that he could find no property of the debtor whereon to levy the same. The referee found that plaintiff is holden to said creditors for the value of said stoves.

That the defendants a few hours after the plaintiff had attached said stoves, went with an officer and by virtue of sundry writs of attachment against said Wiley, took said stoves and disposed of the same in payment of the claims mentioned in said attachments.

That the plaintiff at the time of the attachment, and for a year or more before had occupied a room in a building leased by Henry & Pond, two of the defendants; and that plaintiff's occupation was exclusive of all others, although it appeared that Henry & Pond had occasionally stored a few articles in this room, which was used by the plaintiff as a store room, his place of business

Slate *v.* Barker et al.

being in another room; there were two door ways to this room, one opening into a lane leading from the street, the other into a back room occupied by Henry & Pond, as a wood room. That the said Wiley was a stove dealer at Bellows Falls, and had his store or place of business on the east side of the street from the building in which plaintiff's said store room was; that a few months before the attachment by the plaintiff, said Wiley had hired the privilege of storing his stoves in said room of the plaintiff, and used to go as often as he pleased to said store room, passing up said lane and entering said room by the door opening into the lane as aforesaid.

That early in the morning of said second day of January, 1851, and before day light, the plaintiff with said writs went to said store room, and attached said stoves, forty in number, and marked the same by writing on them with chalk " attached," fastened the outside door with an iron hasp inside, as accustomed to fasten the same nights, but did not fasten the door opening into the room occupied by Henry & Pond, as a wood room; and about 6 o'clock in the morning plaintiff requested one Horton, who worked in said building for said Henry & Pond, to notify any one that came, that he had attached said stoves. That the plaintiff thus left the stoves, and returned them attached on said writs of attachment. That in a few hours after, the defendants came with an officer having sundry writs against said Wiley, and attached and moved the said forty stoves away; and afterwards in due course of law sold said stoves and appropriated the avails in payment of the claims mentioned in their said writs; that it also appeared that the officer and the defendants were informed of the attachment by the plaintiff before they moved away the stoves.

The County Court, September Term, 1853,—COLLAMER, J., presiding,—accepted the report of the referee, and rendered judgment thereon for the plaintiff.

Exceptions by defendants.

*Stoughton & Baxter* for defendants.

The question arising upon the report is, whether the attachment made by the plaintiff was valid as against the defendants.

The law is well settled, that in order to constitute a legal attachment the officer must so far have the possession of the property as

" necessarily " to exclude acts of dominion over it by others ; this may be done by the officer's taking and keeping actual possession of the property ; by putting it into the custody of some one acting as his servant; or by locking up the property and retaining the key, neither of which was done in the present case. *Newton* v. *Adams et al.*, 4 Vt. 437. *Lyon* v. *Rood*, 12 Vt. 233.

The room where the stoves were stored was in the joint occu-pancy of the plaintiff and Wiley, and how the plaintiff might put an end to Wiley's occupancy does not appear ; but it does appear that for some months before the attachment, Wiley had been in the occupancy of said room under contract to pay plaintiff for the use of the room. It was not merely hiring the plaintiff to store the stoves in his room ; but it was hiring the storage with a right to go to said room as often as he pleased with his customers, and there selling and delivering such property as he kept there.

We think, that placing the writs in the plaintiff's hands was not sufficient of itself to constitute the attachment a valid one, he must in some way dispossess Wiley and place the property neces-sarily beyond his dominion, and that too in a manner to give notice to others of the plaintiff's custody. Property not in the actual custody of any one is in law in the custody of the owner. 7 Conn. 271.

Nothing was done to exclude said Wiley's dominion over the property. In the morning, he and all others fonnd the same state of things as to the situation of the property as for months previous, and leaving it in Wiley's custody was an abandonment of his lien. *Pomeroy* v. *Kingsly*, 1 Tyler 294.

Suppose the officer learns in the street, that the property is un-der attachment, and he goes, as in this case, to learn the truth of the rumor, and finds it still in the debtor's possession, doors open as usual, the debtor and others the same means of access to it as usual. Now what does such a notice amount to ? Certainly noth-ing which would render the first attachment *valid*, is valid without notice. Must the officer receiving such notice stand by and see the third officer who had not heard these rumors take the property upon other debts ? We say not. *Young* v. *Walker*, 12 N. H. 502. *Gordon* v. *Jenney*, 16 Mass. 465.

*D. & G. B. Kellogg* for plaintiff.

XXVI        42

The only question raised upon the report of the referee is, whether the plaintiff's attachment is valid against subsequent attaching creditors.

We understand the main object to be accomplished in making an attachment, is to give notice to those interested.

In attaching real estate and certain personal property, the statute makes it sufficient notice to leave a copy in the town clerk's office.

To constitute a valid attachment, it is only necessary to exercise sufficient control over the property to give timely and unequivocal notice of the custody of the attaching officer. *Lyon* v. *Rood*, 12 Vt. 233. *Train* v. *Wellington*, 12 Mass. 495. *Denney* v. *Warren*, 16 Mass. 420. *Gordon* v. *Jenney*, 16 Mass. 465. *Newton* v. *Adams*, 4 Vt. 437. *Huntington* v. *Blaisdell*, 2 N. H. 317. *Bagley* v. *White*, 4 Pick. 395. *Fitch* v. *Rogers*, 7 Vt. 403. *Mills* v. *Camp*, 14 Conn. 220.

It is held sufficient if either the subsequent attaching creditor or officer knew of the prior attachment. *Gordon* v: *Jenney*, 16 Mass. 465. *Denney* v. *Warren*, 16 Mass. 420.

Here the plaintiff had and was entitled to the exclusive possession of the room in which the property was. He took measures to secure the same as well as he could, marked the property and left notice with Horton of his attachment.

That Horton opened the door of the office to his employers cannot effect the rights of the plaintiff. The plaintiff was not bound to protect the property against theives and trespassers.

Taylor the second attaching officer had notice of the plaintiff's attachment before he attached the stoves, also some of the creditors who directed the attachment.

The opinion of the court was delivered by

ISHAM, J. The inquiry in this case arises upon the validity of the plaintiff's attachment. If that was legal, and has not been in any way abandoned or relinquished, the property was wrongfully taken by the defendants, and the plaintiff is entitled to recover its value. It is insisted that the plaintiff, after his attachment, neglected to take the property into his custody and possession, in a manner to exclude it from the possession of Wiley, and that, for

that reason, it was lawfully taken by the defendants on their writs, as his property.

In the case of *Lyon* v. *Rood*, 12 Vt. 233, it was held, that "to "constitute a valid and legal attachment, the officer must take and "keep the custody and control of the property, either by himself "or his servants, in such a way, as to exclude all other persons, "so as to afford unequivocal notice of his own custody;" and from the cases of *Lane* v. *Jackson*, 5 Mass. 157, *Train* v. *Millington*, 12 Mass. 495, and *Naylor* v. *Dennie*, 8 Pick. 198, it appears that the same rule is adopted in Massachusetts. In the case of *Mills* v. *Camp*, 14 Conn. 219, it was held, "that a transfer of possession "and an actual removal of personal property is necessary, in order "to render an attachment valid, as against a subsequent attach-"ment." The time and manner of that removal must depend, in a great degree, upon the nature and character of the property attached. In all cases, the officer has a reasonable time to effect it; and where the property is cumbrous and incapable of removal, it is dispensed with. In such case, his continual presence, by himself or an agent, is not necessary. It is sufficient if he uses due vigilance to prevent the property from going out of his control. The principle requiring a change of possession of the property attached, and its actual custody by the officer, has always been enforced in this state, for the purpose of giving timely and general notice of the attachment and lien of the officer, and to prevent fraud; as was observed by SHERMAN, J. in *Mills* v. *Camp*, 14 Conn. 225, "it is not only a rule of evidence, but of policy," from which, in this state, we feel no more disposition to depart in the case of attachments, than on a sale of personal property.

The plaintiff's attachment was made on the 2d day of January, 1851. The property at the time was in a room which for more than a year had been in the exclusive possession and occupancy of the plaintiff. This occupancy and possession by the plaintiff was not affected by the circumstance, that Henry & Pond occasionally placed a few articles in that room, nor that they or their servants passed through the room on some occasions, to and from its outer door; for they made no claim of a right to its occupancy for those purposes. It was a mere privilege permitted by the plaintiff, and enjoyed, as subordinate to, and subject to the will of the plaintiff. Of the same character, it would seem, was the occupancy of Mr.

Wiley in depositing this property in that room. There is nothing in the case, inconsistent with the right of the plaintiff, to have exercised the exclusive control of the room, as against Mr. Wiley or any other person; and when after the plaintiff's attachment was made, he fastened the outer door of that room, so as to cut off all public access to it, it was a termination of the privileges which had been previously enjoyed, and a resumption on his part of its exclusive possession, as against Mr. Wiley and every other person.

But if we were to consider Mr. Wiley, previous to the plaintiff's attachment, as having a joint possession of the room with him, the plaintiff had a right, under the authority of the process in his hands, to terminate that possession for the time, at least, that intervened between his attachment and that of the defendants. This was as effectually done, so far as to constitute a *legal attachment,* by closing and fastening the outer door of that room, as if the property had been in another building, and he had taken the key. *Newton* v. *Adams,* 4 Vt. 437. 16 Mass. R. 420, 465. Under the circumstances of this case, we do not think that the plaintiff's attachment was defeated by not closing the door-way leading from this room to the wood-room in the same building. That passage led to no room that had ever been in the occupancy of Wiley, and it cannot be said, that a reasonable time had expired, for the plaintiff to effect a removal of the property to another place, if such removal was necessary. The case falls within the reason and rule of the case of *Newton* v. *Adams,* in which the court observed that, " it could not with propriety be insisted, that an officer " is bound, in order to avoid the implication of fraud, to secure the " property effectually against theives and trespassers; all that can " be necessary in such cases is, that such possession shall be taken, " as will give sufficient notoriety to the attachment." When, in addition to that circumstance, it is found by the referee, that the defendants had actual knowledge of the plaintiff's attachment, before their attachment, that this plaintiff had marked the property as attached, and notified a clerk or workman of Henry & Pond's, who occupied other apartments of the same building, of the attachment, and requested him to notify others that came there, of that fact, we must consider, that the attachment was legal, and that the plaintiff had done all that is required in assuming, and main-

taining the control and possession of the property. We think, therefore, the plaintiff's attachment is sufficient to perfect his right to that property, and that the defendants were not justified in taking it from him.

The judgment of the County Court is affirmed.