Demurrer to be sustained; and<br>Bill dismissed.

*Litchfield,*
*June, 1832.*

Beach
*v.*
Norton.

---

## KELLOGG and another *against* WADHAMS.

Where a writ of attachment purported, on its face, to be directed, in the usual manner, to the sheriff, his deputy, or a constable; and on the back was a certificate of the magistrate who signed the writ, under his official signature, that the plaintiff's agent appeared, and "made an affidavit respecting the within writ in the following words," reciting the oath prescribed by the statute, to which these words were added: "Therefore, this writ is directed to *U. T.,* an indifferent person, to serve and return;" it was held, that it sufficiently appeared, 1. that the magistrate administered the oath according to the requirements of the statute; 2. that the writ was directed to such indifferent person; and 3. that the name of such person was inserted in the writ; and consequently, that he was duly authorized to serve the process.

*Litchfield,
June, 1832.*

Kellogg
*v.*
Wadhams.

In the transfer of title to land, by the levy of execution, the return of the execution into the office of the clerk of the court from which it issued, is the consummating act; and until this is done, the previous proceedings are subject to the controul and revision of the officer.

Therefore, where all the requisite proceedings, in the levy of an execution on land, were had, until it had been returned to and recorded in the town-clerk's office, when it was discovered, that the sum at which the land was appraised, was omitted, by mistake, in the certificate of the appraisers, a blank being left for it; and the officer thereupon took the execution from the town-clerk's office, carried it to each of the appraisers, by whose consent the blank was filled with the sum at which the land was appraised, and then the certificate was resigned by the appraisers separately, and the return was resigned by the officer; after which the execution and return were deposited in the town-clerk's office, and the record there was made conformable to the return so amended; and finally, the officer made his return into the office of the clerk of the court; all these proceedings having taken place within the life of the execution; it was held, 1. that under these circumstances, it was competent to the officer to correct the mistake; 2. that the correction was properly made; and consequently, that the levy was valid.

THIS was an action of ejectment for two tracts of land in *Harwinton;* to which the general issue was pleaded and closed to the court.

The cause was tried at *Litchfield, February* term, 1832, before *Daggett,* J.

The demanded premises were formerly owned, by *John Watkins,* under whom the plaintiff and the defendant claimed title. Both parties were the creditors of *Watkins;* who had attached the lands, and had them set off on their respective executions. The defendant's writ of attachment was served *April* 2nd, 1828; that of the plaintiffs, *May* 27th, 1828.

The defendant's writ purported, on its face, to be directed, in the usual manner, to the sheriff, his deputy, or a constable. On the back was an entry in the following words: " *Litchfield* county, ss. *Torrington, April* 2nd, 1828. Personally appeared *George D. Wadhams,* agent or attorney for the within named *Frederick B. Wadhams,* and made an affidavit respecting the within writ, in the words following: " You solemnly swear, that you verily believe the plaintiff is, in danger of losing the debt in this writ, unless an indifferent person be deputed for the immediate service of the same: *So help you God.* Therefore, this writ is directed to *Uri Taylor* of said *Torrington,* an indifferent person, to serve and return.

Russel C. Abernethy, Justice of the Peace."

The levy of the defendant's execution was admitted to be

legal and effectual to transfer the title, except so far as it was rendered otherwise, by the following facts. The appraisers, on the 28th of *September*, appraised the lands levied on, at 513 dollars, 29 cents; communicated their appraisal to the officer; and delivered to him a certificate thereof in writing, under their signatures; but the sum at which the lands were appraised, was not then inserted in such certificate, a blank being left for it. The appraisers and the officer, however, supposed that it had been inserted; and the latter, on the 29th of *September*, carried the execution, with his return and the blank certificate thereto annexed, to the town-clerk's office for record; and thereupon the town-clerk recorded these papers, leaving a blank in his record corresponding with that in the certificate. Some time afterwards, *viz.* on the 20th of *October*, but within the life of the execution, the officer having discovered the omission in the certificate, took the execution from the town-clerk's office and carried it to each of the appraisers, obtained their consent, separately, to fill up the blank in the certificate with the amount of the appraisal; which was accordingly done; and each of the appraisers, separately, resigned the certificate and delivered it to the officer, who resigned his name to the return, carried it to the town-clerk's office, and had the blank filled up, so that the record corresponded with the return so amended. The town-clerk's certificate on the town records and on the execution, of the time of its being received for record, which had been made when it was first left, was permitted to remain unaltered. After these proceedings, but still within the life of the execution, the officer returned it to the clerk of the superior court.

These facts being found by the judge, a case embracing them, was reserved for the advice of this Court, as to what judgment should be rendered.

*L. Church* and *Sanford*, for the plaintiffs, contended, 1. That the defendant's judgment was void, because his original writ was not otherwise served than by an indifferent person, and it was not legally *directed* to him. It is the wise policy of the law, that its process shall be directed to known public officers; and the law sanctions a departure from this policy only in cases of supposed necessity; and the statutes authorizing such departure have always received a strict construction. *Thacher* v. *Hancock*, 1 *Root* 284. *Chauncey* v. *Strong*,

*Litchfield,*
*June, 1832.*

Kellogg
*v.*
Wadhams.

*Litchfield,*
*June, 1832.*

Kellogg
*v.*
Wadhams.

2 *Root* 369.   *Eno* v. *Frisbie*, 5 *Day* 127.   *Case* v. *Humphrey*, 6 *Conn. Rep.* 139.

This direction is defective, first, because, the magistrate who signed the writ, has not certified thereon, nor does it appear from his indorsement, that *he* administered the prescribed oath to the party or his attorney.   The certificate says only, that *George D. Wadhams*, attorney, &c., appeared and made an affidavit.

But secondly, this writ is directed to the sheriff, &c., and not to an indifferent person, in any manner whatever.   The magistrate does, indeed, certify, that the writ is directed to *Uri Taylor*, an indifferent person ;   but upon examining the writ, it appears to be otherwise directed.

Thirdly, if directed to *Taylor* at all, it is not directed in the form required by the statute.   The statute says, the magistrate " shall insert in the writ the name of the indifferent person." But *Taylor's* name is not " *inserted in the writ.*"   To *insert* is to *set in* or *among*.   To *insert* the name *in* the writ, then, is to set it in or among the other words which constitute the writ.   There is a material difference between the expressions " *in* the writ" and " *on* the writ," both in common parlance and in the statute regulating civil actions.   The subscription of the magistrate on the face of the writ, is the *close* of it.   A further certificate *on the back*, is not a part of the writ.   Can a name, then, be inserted in the writ, without placing that name, in point of locality, before the end of it ?—A question not requiring an answer.

2. That the defendant's execution was not legally levied and gives him no title ;   because the land was not legally appraised. The statute requires, that the appraisers should make an estimate of the value of the land *in writing*, under their hands, and deliver the same to the officer, *before* he can set out the land to the creditor in satisfaction of the execution.   *Stat.* 57. *Metcalf* v. *Gillett*, 5 *Conn. Rep.* 400.   But this land was set out to the creditor in satisfaction of the execution *before* the officer had any *written* estimate of its value from the appraisers. His return shews, that he in fact set out the land, on the 28th of *September ;*   then made and published his return ; and on the next day, caused it to be recorded ; but he had no written estimate of the value of the land, until the 20th of *October*. The return is not the setting out, but the evidence of it, furnished by the officer, in the manner prescribed by law ; but the

setting out must necessarily be effected, when the return is, by the officer, delivered to the town-clerk for record, (if not before done)—as the record is notice of a transfer of title to all the world. The execution was then satisfied; it had answered its purpose; and was no longer a process *to be executed.* *Williams* v. *Cable,* 7 *Conn. Rep.* 119.

Nothing was afterwards done to validate the levy. The land was not appraised or set out anew. The appraisers did not assemble or act together; they did not view the land, or adopt any other mode of ascertaining its value; nor did they profess to appraise it at its value *at that time.* The officer did not alter his return, or make a new one; did not go again upon the land; did not consult or notify the parties; did not attempt or profess to set out the land anew; and did nothing but fill the blank and reassert the fact, that he had set out the land, and completed his return, on the 28th, and procured it to be recorded, on the 29th of *September.*

The only way in which the error could be corrected, (if it could be at all) was, by procuring a new appraisal, and setting out the land anew on such appraisal; which was not done.

*T. Smith,* for the defendant, insisted,   I. That the direction of the writ to the indifferent person to serve and return, was sufficient. The objection that the magistrate did not *insert in* the writ the name of the indifferent person, pursuant to the statute, is unfounded. The object of this clause is, to provide for the *specification,* and not to fix the *location,* of the name of the person, who is to serve the writ. There are good reasons why the name should be specified. Where the writ is directed to a known public officer, there is no necessity for inserting the name of such officer, because the whole community are bound to take notice of his official character; but no one is obliged to take notice of a special authority. Besides, the legislature doubtless intended, that the magistrate should pass upon the question of disinterestedness : that he should select a fit person to serve the writ, and designate him by name, instead of making a general deputation of any indifferent person.

Admitting, however, that the name must be inserted *in the writ,* the question arises, what is the writ? The writ comprises every thing which confers authority to serve it; and if the name appears in any part of it, it is inserted in the writ. The direction to the sheriff, &c. together with the oath and the deputation of *Uri Taylor,* constitute the directory part of the writ,

*Litchfield,*
*June, 1832.*

Kellogg
*v.*
Wadhams.

and authorize him to serve it. This principle is recognized, virtually, if not explicitly, in *Case* v. *Humphrey*, 6 *Conn. Rep.* 139. and *Eno* v. *Frisbie*, 5 *Day* 122.

2. That the mistake made in not filling up the blank in the appraisers' certificate, in the first instance, was not fatal. The officer had a right to commence as an original proceeding, *at* the mistake, and then perfect the levy according to law.

In the first place, it was not necessary, after the error was discovered, to make a demand of the sum due on the execution; for that had been already done according to law.

Nor was there, secondly, any need of a new levy on the land; as the first was sufficient. *Bill* v. *Pratt*, 5 *Conn. Rep.* 123. 126. *Benjamin* v. *Hathaway*, 3 *Conn. Rep.* 529.

Nor, thirdly, of a reappointment of the appraisers; for there was an existing valid appointment. Their commission remained unexpired: they were not *functi officio*. *Bill* v. *Pratt*, 5 *Conn. Rep.* 123. 126.

Nor fourthly, was there any need of their going again on the land, or meeting anew to deliberate on the subject; for they had already settled the value of the property, upon full and mature consideration. *Pendleton* v. *Button*, 3 *Conn. Rep.* 406.

Fifthly, the certificate, having been filled up, was, for the first time, effectively delivered to the officer. He then proceeded to complete the business; delivered his return, a second time, to the town-clerk; and the record was perfected—all within the life of the execution. The officer then made the only return to the office of the clerk of the court; and thus was the land set out according to law. *Booth* v. *Booth*, 7 *Conn. Rep.* 350.

BISSELL, J. The defendant's title is controverted on two grounds. It is contended,

1. That the defendant's writ of attachment was void.

2. That the levy of his execution was invalid.

If the plaintiffs have succeeded in establishing either of these positions, they are entitled to a judgment in their favour; otherwise, it is conceded, that judgment must be rendered for the defendant.

1. It is contended, that the defendant's writ was void.

First, on the ground, that the magistrate has not certified, that he administered the oath, according to the requirements of the statute.

There is not the slightest foundation for this objection. The magistrate has certified, that the agent and attorney of the party personally appeared before him, and made an affidavit *" respecting the within writ in the words following."* The oath is then set forth at length, and in the language of the statute.

*Litchfield,*
June, 1832.

Kellogg
*v.*
Wadhams.

As little foundation is there for the objection, secondly, That the writ is not *directed* to the indifferent person ; but that there is only a certificate of the magistrate that the writ was so directed.

The magistrate, after setting forth the oath required by law, immediately subjoins : " Therefore, this writ is directed to *Uri Taylor,* an indifferent person, to serve and return." To this he has affixed his official signature. This is, in itself, a direction ; and is the same as though the justice had said *" Therefore I direct this writ,* &c."

Thirdly, it is objected, (and this objection has been principally relied on,) that the direction to the indifferent person is not, according to the provisions of the statute, *inserted in the writ*, but is indorsed upon it.

The statute provides, that no writ shall be directed to an indifferent person, until the same shall be complete, in all other respects. It then specifies the cases, in which it may be so directed ; and then enacts, that the authority *shall insert in the writ*, the name of the indifferent person to whom it is directed.

It was, undoubtedly, the object of the legislature to provide, that the name of the indifferent person, to whom the writ was directed, should be specified : and for this, there are very good reasons. All persons are bound to take notice of the official character of the sheriff, or his deputy ; and so of all public officers. But with regard to private persons, it is otherwise ; and the party against whom process issues, is not bound to take notice of a special authority, unless it be shown. The statute requires that this authority should appear upon the process itself. But to suppose, that the legislature meant to provide, that this authority should appear upon one side of the paper, rather than upon the other, is to suppose them engaged in a very childish employment.

The spirit of the statute, then, has been complied with : and not only so, but there has been a compliance with it, even to the letter. What constitutes the writ ? Is not the oath a part of it ? And does not every direction, which precedes the final signature of the magistrate, form a part of, and go to con-

stitute the entire process ?   On this subject, it is impossible to doubt.   The direction to the indifferent person was, literally, *inserted in the writ ;* and  this objection, as well as the others, must be overruled.

2. It is objected, that the levy of the defendant's execution is invalid :  and  the  question now to be discussed, is, whether the proceedings stated in the case reserved were so far irregular as to render that levy void ?

The statute, after  having prescribed the manner, in which executions shall  be levied on real estate, makes  it the duty of the officer to cause the execution, with his indorsement thereon, to be recorded at length, in the records  of the town-clerk, where the lands or real estate lie—*and that he shall  then return such execution into the office of the clerk of the court, from whence it issued,* there to be kept on file.

The statute then enacts, that " all  executions  served, returned and recorded as aforesaid, shall vest all the title of the debtor, in the  creditor,  his heirs and assigns." *Stat.* 58. *tit.* 2. *s.* 77.

From  these provisions of the statute, it is  very  clear, that no title vests in the creditor, until the execution is returned into the office of the clerk of the court, from  whence it issued. This is  the last and consummating act ;  and  until this is done, every thing may be considered as *in fieri.*   The whole previous proceedings are in the  hands, and subject to the controul, of the officer :  and the question is,  whether while  thus under his controul,  he has the power to  correct any mistake, which may have intervened ?  The question seems almost too plain for argument.   To deny him this power, would be to oppose all reason and all analogy.   All officers,  whether judicial or ministerial, possess this power :  and the frequent  exercise of it, is indispensable to the administration of justice, as well as to a right discharge of their official duties.

It was not denied, in the argument, that the correction might have been made, at any time before the delivery of the execution to the town-clerk, to be recorded.   But it was contended, that by that act, the officer became *functus officio,* and could exercise no further controul over the proceedings.   The whole argument is  built on a  false assumption.   The officer did not become *functus officio,* by this, any more  than by  any other act, in the course of the proceeding.   He had another duty yet to perform, and without the performance of which, every thing

done by him, would have been entirely nugatory. There is no reason for making this delivery to the town-clerk, a rest in the proceedings, and for saying, that at this point, all mistakes which had occurred, became fixed, and incapable of correction.

It has, however, been urged, that although it was competent to the officer to correct the mistake, yet he has not done so: that the only mode in which it could be done, was by a new levy, and a new appraisement. This was clearly unnecessary. *Bill* v. *Pratt*, 5 *Conn. Rep.* 123. *Benjamin* v. *Hathaway*, 3 *Conn. Rep.* 548. There was no mistake in the *levy*. That was correct; and so was the appraisement. The only defect was in the evidence of such appraisement. This the officer has caused to be corrected. And this, I think, he had a perfect right to do. Suppose the officer had discovered, before the levy was perfected, that the appraisers had neglected to put their signatures to the appraisal: might he not have caused that to be done? And where is the difference in principle, between affixing a signature and filling a blank? In my judgment, the proceedings of the officer were entirely correct. He recommenced at the spot, where the mistake intervened. He caused an appraisement in writing to be delivered to him. He then proceeded to complete the levy;—returned the execution, with his indorsement, corrected, to the town-clerk's office, and caused it to be recorded. He then made the only return, which was ever made, to the office of the clerk of the court. This was setting out the land according to law. *Booth* v. *Booth*, 7 *Conn. Rep.* 350.

The superior court is to be advised, that judgment be rendered for the defendant.

The other Judges were of the same opinion.

Judgment for defendant.