*Litchfield,*
June, 1841.

### MILLS *against* CAMP and others.

Mills
*v.*
Camp.

To render an attachment of personal property valid and effective, as against subsequent attaching creditors, the general rule of law founded on principles of evidence and policy, requires a change of possession and an actual removal of the property attached.

But where a removal of the property attached would be attended with great waste and expense, it may be dispensed with.

And in such case, the continual presence of the officer with the property, by himself or an agent, is not necessary ; it being sufficient if he exercise due vigilance to prevent its going out of his controul.

To an action of trespass, by an officer, who had attached personal property, against a subsequent attaching creditor, for taking the same property, it is no defence that the plaintiff had made no demand of it of the defendant, upon the execution issued in the first suit, previous to the commencement of the present action.

THIS was an action of trespass for taking and carrying away a quantity of iron ore, amounting to 500 tons and upwards.

The cause was tried at *Litchfield, August* term 1840, before *Waite*, J.

The plaintiff, who was a deputy sheriff, claimed title to the ore in question, by virtue of the service by him, as such officer, of several writs of attachments against the *Ousatonic Iron Company*, in behalf of the creditors of that company, on the morning of the 17th day of *October*, 1838. The debts on which these writs were issued, were justly due ; and judgments were afterwards obtained in the suits, and executions thereon were duly issued. The ore, at the time when it was attached, lay upon unenclosed land of the *Ousatonic Iron Company*, called "an ore bank," near their furnace in the town of *Kent*, and adjoining the highway. It was not removed, by the plaintiff; but was left in precisely the same situation in which it was before it was attached ; and so it continued, until it was subsequently removed, by the defendants. At the time of the attachment, the plaintiff was upon the land of the *Ousatonic Iron Company*, where the ore was situated, and at the furnace, where their workmen were at work, carrying on their business, and informed such workmen and the clerk of the company, that he had attached the ore. The workmen were thereupon dismissed, and the operations of the company ceased. These facts became generally known and talked of, in the vicinity. After the plaintiff had given

notice of the attachment, he employed a clerk of the company to assist him in making out copies of his writs to enable him to complete the service. On the 29th of *November*, 1838, *Silas Camp*, one of the defendants, prayed out a writ of attachment in his favour against the *Ousatonic Iron Company*, to recover a debt, justly due to him from that company, and caused the ore in question to be attached thereon, and to be removed a few rods, and to be deposited upon land not owned by the company, but in plain view from the "ore bank," where it remained until after the commencement of this suit. The removal of the ore, by *Camp* and the other defendants, his assistants, constituted the trespass for which the present action was brought. The attachments made by the plaintiff were known to *Camp*, at the time of his attachment.

The plaintiff, to justify his omission to remove the ore, offered evidence to show, that such removal would be attended with great expense and serious injury to the property. From the evidence introduced, it appeared, that the expense of the removal would be from 12 1-2 to 25 cents *per* ton, the value of the ore being 3 dollars, 25 cents; and that the wastage upon it would be from ten to fifteen tons; and in consequence of its being placed upon the ground, a portion of it would be mixed with the earth, so that from 50 to 100 tons would require washing, at an expense of from 10 to 20 cents *per* ton.

Upon these facts, the defendants claimed, that in order to constitute a valid levy upon this property, by the plaintiff, it was necessary that he should remove it; and that, by leaving it on the premises of the company, where it might be controuled by them, the lien, if he had acquired any, was thereby discharged: That admitting the removal of the property not to be necessary, yet it was incumbent on the officer either to retain the actual custody of it, or to appoint some person to retain the custody for him; and having failed so to do, the lien, if he had acquired any, was thereby discharged: And that the lien acquired by the plaintiff's attachments was lost, unless within the time prescribed by the statute, the executions were taken out and levied upon the ore, and unless demand was made of the defendants for it: And the defendants prayed the court so to instruct the jury.

The plaintiff claimed, that in consequence of the bulky nature of the ore attached, and the expense and injury that

would result from a removal, the plaintiff was not required by law to remove it: That he continued to have the possession of the ore, until it was removed by the defendants: That in consequence of the taking by the defendants, a right of action accrued to the plaintiff: And that the plaintiff was under no obligation to levy upon the ore, or to make any demand thereof of the defendants.

Upon these conflicting claims of the parties the court instructed the jury as follows: "It is a general rule of law, that to enable an officer to perfect an attachment of personal property, and retain his lien upon it, he must remove it from the possession of the debtor, and keep it in his own. If he leave the property with the debtor, or abandon it and suffer it to go back into the debtor's possession, his lien is gone, and the property may be lawfully attached, by another creditor. But to this rule requiring the removal of personal property attached, there are exceptions. If the articles are bulky and ponderous, such as cannot be removed, without great expense compared with their value, and without serious injury to the property, and especially, if they be such as are never, or rarely, deposited in a building for safe-keeping, and are not situated within any private enclosure of the debtor; a valid attachment may be made, without a removal of the property. To enable the officer, however, to preserve his lien, he must retain either actual or constructive possession of the property. In this case, as in all others, if he abandon the property, or suffer the debtor to regain possession, the lien will be lost.

"Although it is usual, and may be very proper, for an officer having attached property, which the law does not require him to remove, to appoint some person to take care of it; yet his omission to do so will not, necessarily, destroy his lien. He has the same right to retain the care and custody of the property himself, as he had to appoint another to do it for him. Nor is it necessary that he, or an agent, should remain constantly with it. All that is required of him, in such case, is, to do what is reasonable and proper for the preservation of his lien, and to prevent the debtor and others from taking the property from him. And this may be done without keeping some person constantly with it. In the absence of all fraud, if the officer, after the attachment, cause it to be generally and publicly known in the neighbourhood where the property

is situated, that he has attached it ; and it be so situated that it cannot be taken away, without his knowledge, and without his having an opportunity of prohibiting the taking ; if he do nothing indicative of any intention to relinquish his lien ; and especially, if he do not suffer the debtor to regain actual possession, or exercise any acts of ownership over it ; he may be considered as continuing in the constructive possession of the property, and sustain an action for the removal of it, by another, without his consent.    And if the jury should find from the evidence before them, that the plaintiff had lawfully attached the ore in question, had never parted with his lien upon it, nor suffered it to go again into the possession of the debtor, until it was removed by the defendants ; and that they, against his will, had taken it away from him; the jury might return a verdict in favour of the plaintiff, for the value of the ore so taken.    But if the jury should find the facts otherwise, their verdict must be for the defendants."

The jury returned a verdict for the plaintiff; and the defendants moved for a new trial for a misdirection.

*O. S. Seymour*, in support of the motion, contended, 1. That in order to make a valid attachment of personal property, as against a subsequent attaching creditor, the officer first attaching must, *in all cases,* take and *keep,* by himself, or some one in his behalf, the possession of the property attached. This rule, he insisted, is *universal,* and subject to no exception. *Taintor* v. *Williams,* 7 *Conn. Rep.* 271. *Hollister* v. *Goodale,* 8 *Conn. Rep.* 332. *Swift* v. *Thompson,* 9 *Conn. Rep.* 63. *Toby* v. *Reed,* 9 *Conn. Rep.* 216.    It is founded in technical reasons.    The officer holds the property attached as "a pledge"; and actual possession is of the essence of a pledge.    The general property, notwithstanding the attachment, remains with the owner.    The officer, therefore, has no *substratum* for any constructive possession.    As a matter of policy too, the rule is of immense value.    If a valid attachment could be made, without taking possession of the property by the officer, one half of the personal property in the state would be covered by fraudulent attachments, some privately, and some publicly proclaimed, as might best answer the designs of those engaged in them.

Ponderous articles are no exception to the universal rule

requiring change of possession. This rule does not require the officer, in any case, to change the *local situation* of the property attached. The law is satisfied, if the *possession* is changed. The change of location, in ordinary cases, is made and expected, because it is a common, and convenient and effectual mode of changing the possession. But a change of possession can be made, in many cases, as effectually, without a change of location as with it ; as where a store of goods is attached, and the officer locks up the goods and takes the key; or where the officer, by himself or a keeper, remains in the custody of the property. In this view of the subject, ponderous articles are capable of a change of possession, without any difficulty whatever. The officer may, without removal, take them into his actual charge, custody and possession, or delegate this duty to a keeper. Where the property, however, is, when attached, on the debtor's premises, and is there suffered to remain without removal, inasmuch as the constructive possession is in the general owner, an actual possession by the officer is necessary to destroy the constructive possession of the debtor. And this is not inconsistent with the notion of accommodating the possession to different kinds of property. The possession of a gold watch or a jewel will be different from that of an anchor or a grindstone. But still the rule of law is the same. There must be a substantial *bona fide* change in the possession of the property, in all cases. Let it be decided, that there is a difference between ponderous articles and others, as to the necessity of a change of possession, and the law is at once involved in difficulty and uncertainty. No lawyer can tell his client what articles must be removed, and what need not be.

If the question had been submitted to the jury on the matter of fact, whether the plaintiff, as attaching officer, was in possession of the property, at the time of the attachment by *Camp*, the jury must have found for the defendants : For, first, the *Ousatonic Iron Company* being the general owners of the property, this ownership would draw the possession to them ; and secondly, the property being left on premises belonging to, and occupied by, the company, must be deemed to have been in their possession, unless the officer, or some one in his behalf, remained in custody of the property. The company did not relinquish possession, by giving the officer a

lease, or even a license. [The counsel then went into a critical examination of the several positions in the charge, as applicable to the facts of the case, insisting in conclusion, that the jury had thereby been led to a wrong result.]

*W. W. Ellsworth* and *L. Church,* contra, vindicated the charge, insisting that the judge has not therein laid down any incorrect principle of law, and that the principles laid down were all that were necessary in submitting the facts to the jury. They remarked, that they had nothing to do with the question of the *sufficiency* of the evidence, whether the property was proved to be of the character and in the condition which rendered it unnecessary to move it, but simply as to the correctness and applicability of the charge.

The first position is, that property must generally be removed, when attached, but that to this rule there are exceptions. Now, is not this true? There are cases where the removal of the property is impossible; as a ship at sea, a house standing on another man's land, hides in the vats, &c. There is another class where a *symbolical* delivery is deemed sufficient. It should be borne in mind, that the rule requiring a removal, is not of statute obligation, but is a rule of evidence or policy; and where the reason fails, the rule fails. Of what benefit in this case, would the removal of the property be? Here was no false credit given.

The next position of the charge is, that property attached, may be so bulky and ponderous, it may be so expensive to remove it compared with its whole value, and it may necessarily be so injured by a removal, that if not in buildings or private enclosures, the law does not absolutely require its removal. And is not this sound law? Here was a *necessity,* which took the case out of the general rule. This is not the case of goods left and used by the debtor, but a mass of peculiar property, so situated as to form no *indicia* of ownership: it is like a massive pillar of granite in the highway. 2 *Kent's Com.* 394. *Hemmenway* v. *Wheeler,* 14 *Pick.* 408. *Jewett* v. *Warren,* 12 *Mass. Rep.* 300.

If a removal of the property is not absolutely necessary, then the law does not absolutely require the constant presence and supervision of the officer, or an agent appointed by him. The judge accordingly says of such property, that gen-

eral publicity of the attachment, its being so situated that it cannot be taken away, without the knowledge of the officer, and his having an opportunity of actual prohibition, and the debtor's being excluded from actual possession, or the exercise of any acts of ownership, these are all that is necessary.

*Litchfield,*
June, 1841.

Mills
*v.*
Camp.

Under these principles, might not the jury find, that the iron ore in question came within the exception? Might they not find it so ponderous and bulky, so expensive to remove it in comparison with its value, so unavoidably injured by the removal, and in such an open public place, excluded from the uses of the debtor, so publicly known to be attached by the plaintiff and in the custody of the law, as to authorize the conclusion that it need not be removed?

SHERMAN, J. It is admitted in this case, that the debts, for which the attachments were levied, were justly due to the respective creditors; and the principal objection made to the plaintiff's right to recover, is grounded on the fact, that the property was not removed, by the plaintiff, but left, where it was taken, on land in the possession of the debtors.

That a transfer of possession and actual removal of personal property is necessary in order to render a sale or attachment valid as against creditors, is well established, in this state, as a general rule of law. Its object is, to prevent fraud. The particular fraud, against which the rule is intended to guard, is that which seeks to favour the vendor or debtor, by shielding his property, for his benefit, from the claims of creditors. It is not a rule of evidence only, but of policy. As matter of evidence, the continued possession of a vendor or debtor, who is in embarrassed circumstances, yields a presumption that the process or sale is rather colourable than real; for, in general, no reason can be given why possession should not be taken, except that he should be indulged with the disposition or use of the property to the injury of others. But proof of the payment of a full consideration, or of the justice of the debt for which property is taken on legal process, accompanied with the highest evidence of the honesty of the transaction, will not, in general, be sufficient to repel the legal effect of neglecting an actual removal of the property. The means of proving a *bona fide* debt, or the payment of an adequate consideration, are so far within the power of the

parties, where no debt or consideration actually exists; the difficulty of repelling that testimony, by the creditor, is so insurmountable ; and the temptation, on the part of the owner of the property and his friends, to protect him from the pains of penury, is of such controuling influence, that, as matter of policy, the law has removed the temptation to fraud, by making void, as against creditors, sales of personal property and seizures by legal process, unless accompanied by an actual removal of the property. If, when sold or taken by legal process, it is actually removed from the possession of the vendor or debtor, its use or enjoyment by him is made impossible ; and attempts to make feigned sales or seizures for that purpose, are rendered abortive. This rule of municipal law is adopted, with more or less severity, in most places where the common law prevails. In this state, it has been justly considered as wise and salutary, and is rigidly applied, except in certain cases where its application would be impossible or injurious. *Swift* v. *Thompson*, 9 *Conn. Rep.* 63. *Patten* v. *Smith*, 5 *Conn. Rep.* 196. Thus, in the familiar instance of the sale of a ship at sea, a delivery cannot be made at the time of sale, but it is sufficient, if made as soon as may be after the return of the vessel. And when property attached cannot be removed without great injury, as hides in a vat, or paper in a mill, at such a period of the process of manufacture, that a removal would cause material damage or destruction, it is dispensed with. And, for the same reason, if the removal of the ore, in the case under consideration, would be attended with great waste and expense, a just regard to the rights of all parties in interest, would require that it should be left on the place where taken. The officer took possession, by the levy of his attachment. He might retain that possession, if there was no interference of the debtor, while the property lay on the debtor's open field. His continual presence, by himself or an agent, was not necessary. It was sufficient, if he used due vigilance to prevent its going out of his controul. That possession be taken and held by the officer, is, in all cases, indispensable, and that when this is relinquished, there is a termination of the lien, is consistent with the charge in this case. On this point, we approve the opinion given in the case of *Taintor* v. *Williams*, 7 *Conn. Rep.* 271. Nor is the charge at variance with the opinion of

this court in *Hollister* v. *Goodale*, 8 *Conn. Rep.* 332.  Al-
though, in that case, the Chief Justice says, "that the *construc-*
*tive* possession, as between vendor and vendee, would be
sufficient; but an attachment can only be made by taking
*actual* possession ;" and in this, the charge is, that the officer
" must retain *either* the actual *or* constructive possession ;"
yet it is very apparent, that this language is used, in the two
cases, in a different sense.   In the former, it was applied
where no actual possession was ever taken.   An officer had
the key to the door of a carriage house ; and, on his opening
it, another officer stepped in before him, and attached the car-
riage.   The Chief Justice remarks, that the first officer, who
had not taken the article at all, might have such a constructive
possession as would be sufficient, if accompanied with a con-
tract of sale from the owner, but did not amount to an attach-
ment.   But had the first officer, in that case as in this, previ-
ously seized the property, it would not have been contended,
that while he was at the door of the carriage-house, the other
could have stepped in and taken it from him.   In this case,
the charge requires, that there should be an actual seizure of
the property, and taking it into the possession of the officer ;
and the continuance of this possession, while he is absent, is
denominated "constructive."   Such an attachment would not
be liable to the objection, which was sanctioned, by the court,
in the case cited.   The import of the word is sufficiently de-
fined, by the judge, when he says, that if the officer " do not
suffer the debtor to regain actual possession, or exercise any
acts of ownership over it, he may be considered as continu-
ing in the *constructive* possession of the property ;" and the
jury are required to find, that the officer " never suffered it to
go again into the possession of the debtor."   The jury, under
these directions, must have found such a continued possession
of the plaintiff, as was necessary to the legal validity of the
attachment.

  If it was unnecessary for the jury to find the additional
circumstances noticed by the judge—as that the officer caused
the attachment to be generally and publicly known in the
neighbourhood ; that the ore could not be taken away without
his knowledge, &c.—the presentment of them in the charge
did but multiply the chances of success on the part of the de-
fendants, and therefore, furnishes them with no just ground

of complaint.   Neither these, nor the testimony that the defendants knew of the attachment of the plaintiffs, had any tendency to corroborate the proof of the plaintiff's continued possession, or to establish any fact material to his recovery. We do not perceive that those circumstances, in whatever light they are viewed, can furnish any reasonable ground for a new trial.

It is contended by the defendants, that as the plaintiff made no demand upon the executions for the ore which the defendants had taken from him, the lien by the attachments was lost, and the plaintiff divested of his right to the property. But the plaintiff's right of action accrued, and this suit was instituted, before judgment was rendered. The defendants took the property against the express prohibition of the plaintiff, and with full knowledge of his rights. They continued to hold it wrongfully, after judgment was rendered ; and still deny that he had any right to make demand of them.   As between the plaintiff and themselves, the obligation lay on them to return the property, not on him to demand it.

For these reasons, we advise the superior court that a new trial ought not to be granted.

In this opinion the other Judges concurred.

*New trial not to be granted.*