<em>Hartford,</em><br>June, 1842.<br>————<br>Cornwell<br><em>v.</em><br>Lee.

Why, then, may they not be joined ?   We think they may be.   Their interests are no more separate and distinct, than the interests of prior and subsequent mortgagees always are. *Mix* & al. v. *Hotchkiss* & al. 14 *Conn. Rep.* 32. 42.   *Brinkerhoff* v. *Brown*, 6 *Johns. Ch. Rep.* 151.   *Reid* & al. v. *Gifford* & al. *Hop.* 416. 419.   *Watertown* & al. v. *Cowen* & al. 4 *Paige* 510. 515.

We therefore advise the superior court, that the demurrer be overruled.

In this opinion the other Judges concurred.

Demurrer overruled,

————————

## OSBORNE *against* TULLER and another.

The continued possession of personal property, by the assignor, after an assign-
ment of that property, is presumptive, but is not, in all cases, conclusive, evi-
dence of fraud.   The presumption, in such case, is a presumption of *law*,
which cannot be repelled, by proving to the jury, as a matter of fact, that the
assignment was made *bona fide,* and upon a valuable and full consideration.
The facts relied upon in explanation of the continued possession of the assign-
or, are to be submitted to, and ascertained by, the jury, while their legal
effect is to be determined by the court.

Where a part of the property assigned was a horse, which the assignee suffered
to remain in the possession of the assignor, to be used by him enough to
pay for his keeping, being also used occasionally by the assignee ; it was held,
that, considering this as an ordinary transfer of property, there was no legal
reason for such continued possession sufficient to repel the presumption of
fraud.

But an assignment for the benefit of all the assignor's creditors under the statute
of 1828 in addition to the act against fraudulent conveyances, stands on a
different footing from an ordinary sale or assignment *inter partes ;* and, in
such case, the legal presumption of fraud arising from the continued posses-
sion of the assignor, is repelled, by proof that the requirements of that statute

have been complied with, unless the assignor has been permitted to treat the whole as void, by holding himself out to the public as the real owner of the property assigned.

THIS was an action of trespass for a horse and a parcel of sheep-skins; tried at *Hartford, September* term, 1841, before *Storrs,* J.

The chattels mentioned in the declaration were originally the property of *Thomas S. Stevens.* The plaintiff claimed title to them under an assignment thereof to him by *Stevens,* pursuant to the statute in addition to the act against fraudulent conveyances, passed in 1828. The assignment was dated the 9th day of *October,* 1839, and lodged in the office of the court of probate in the district in which *Stevens* resided, on the day of its date. The assignment included, besides many other articles of personal property, the horse mentioned in the declaration, and a number of sheep. The plaintiff claimed, that the skins mentioned in the declaration were taken from said sheep, after the assignment, and that the evidence introduced by him, proved this fact.

On the 14th of *January,* 1840, the horse and skins in question were attached as the property of *Stevens,* in a suit brought by *Tuller,* one of the defendants, against *Stevens,* by *Cooley,* the other defendant, as deputy sheriff, and were afterwards sold upon the execution issued on the judgment recovered in that suit. No question was made as to the regularity of the proceedings under the attachment or execution, or as to the validity of the judgment upon which the execution issued.

The principal question arising on the trial of the cause, was, whether the property assigned, and particularly the horse and the sheep from which the skins were taken, had been so delivered under the assignment to the plaintiff, as to vest a title thereto in him; and whether, if it had been so delivered, it had not been, by the permission and consent of the plaintiff, so used and managed, by *Stevens,* as to render the assignment, in respect to the property in question, void.

The plaintiff claimed to have proved, that he lived about one mile from *Stevens;* that, on the day of the assignment, he went to the premises of *Stevens,* and, in company with him and others, examined all the property assigned; that he then took possession of such property, and constituted *Chauncey Gleason*

his agent, under an agreement to pay him a reasonable sum for his services, to take and retain possession of the property assigned, and to have the entire charge, management and disposition thereof for him, and to account to him therefor, and for the proceeds thereof; that the plaintiff, at the same time, provided a book for *Gleason*, in which he was to keep such accounts; that the plaintiff also notified *Stevens*, that the property was so entrusted to *Gleason*, and that henceforth he was in no way to use or intermeddle therewith; that *Stevens* was present, and heard the agreement so made by the plaintiff with *Gleason;* that *Gleason* did accordingly have the charge, management, and disposition of this property for the plaintiff, as his agent, and kept an account thereof, and paid over and accounted to him, for all the property so put in his possession, except such portions thereof as had been disposed of by the plaintiff personally, and the property attached by the defendants; that shortly after the assignment, the plaintiff caused an inventory of the property assigned, to be lodged in the office of the court of probate, which was known at the time to the defendants; and that, at the time of the attachment, *Stevens* was, and, for several weeks previously, had been, on the prison limits in the city of *Hartford*, during which time, the horse and skins in question had been in the possession and under the controul of *Gleason*, claiming to hold them for the plaintiff. The plaintiff also claimed to have proved, that the sheep from which said skins were taken, were, at the time of the assignment, at pasture on the land of *Noadiah Case;* and that, from the time of the assignment until they were butchered and sold, they were kept by *Case*, at the request and expense of the plaintiff; that they were butchered and sold by *Gleason*, by direction of the plaintiff, and the avails paid over to the plaintiff. No evidence was offered by the defendants to contradict this evidence of the plaintiff, in relation to said sheep-skins.

*Stevens*, at the time of the assignment, was a butcher, keeping a meat-market and a small grocery shop, both of which were in his dwelling-house. *Gleason* was a man having a family, and lived near *Stevens;* and had been in his employment as a clerk in the grocery shop, and his assistant in butchering and retailing meat. The defendants claimed to have proved, that *Stevens* had, after the assignment, until the

*Hartford,*
June, 1842.

Osborne
*v.*
Tuller.

horse and sheep-skins were attached, with the knowledge and consent of the plaintiff, the possession, controul and disposition of the property assigned, and particularly of the horse, and the sheep from which the skins were taken; that he, together with his family, continued to live as before in the dwelling-house, constituting a part of the real estate assigned ; that the grocery shop and meat market were managed by *Stevens,* after the assignment, in all respects, as before ; that he killed and disposed of the sheep from which said skins were taken, and kept and held possession of such skins; that upon the real estate so assigned, he kept said horse, and fed it from his own hay not embraced in the assignment ; that shortly after the assignment, and several months before the attachment, it was expressly agreed between the plaintiff and *Stevens,* that the latter might use said horse in his business, not connected with the property assigned, or the execution of his trust, the plaintiff alleging as a reason therefor, that it was better for the creditors that the horse should, by its use, pay for its keeping, than that any expense should be otherwise incurred in its keeping; that *Stevens* exercised many other acts of ownership, with the knowledge, consent and approbation of the plaintiff; and that there was no visible change in the possession, management or disposition of the property assigned, after the assignment, from what there had been before.

The plaintiff, on his part, claimed to have proved, that, in the course of three or four weeks after the assignment, he disposed of all the property in said shop which had been assigned, most of which was transported to a market, by himself personally ; that a few refuse articles were exposed to sale at auction, and sold to the highest bidder ; that he used said horse for the purpose of transporting the personal property assigned ; that he, several times, took said horse into a neighbouring village and there offered it for sale, without success ; that after the property assigned was principally or wholly disposed of, with the exception of the horse, to enable *Stevens* to support his family, one *Wells* furnished him with cattle to butcher and sell for him, to be assisted therein by *Gleason ;* that *Stevens* being in want of a horse, and the plaintiff being unable to dispose of the horse in question, the plaintiff authorized *Stevens* to use it, until the plaintiff could find a purchaser for it, on condition that *Stevens* would keep it,

while he so used it, without expense to the plaintiff, or the <span>*Hartford*,</span> creditors of *Stevens*, which *Stevens* agreed to do; that the <span>June, 1842.</span> plaintiff, at the same time, requested *Gleason* to endeavour to sell the horse, and if he could hear of a purchaser, to give the plaintiff notice ; and that the horse was frequently used by *Stevens*, under this authority from the plaintiff, until the time when *Stevens* was brought to prison.

*Osborne v. Tuller.*

The defendants claimed, from the testimony, that the personal property so assigned, and particularly said horse and skins, and the sheep from which the skins were taken, had never been delivered to the plaintiff under the assignment ; and that if they had not been so delivered, the assignment, in respect to them, was void ; and they requested the court so to charge the jury. The court charged the jury in conformity with this claim of the defendants.

The defendants further claimed, that the personal property assigned, and particularly the horse and skins in question, if they had ever been delivered to the plaintiff under the assignment, had, with his knowledge and consent, shortly after such delivery, and before the attachment, gone back into and remained in the possession, use and controul of *Stevens*, until the time of the attachment ; and that if this was true as to the horse and skins in question, or any of them, the assignment was, in respect to them, void, unless the plaintiff had shewn a legal and sufficient reason therefor ; and that the saving of expense to the creditors of *Stevens*, in the keeping of the horse, furnished no such reason ; and the defendants requested the court to instruct the jury accordingly.

The plaintiff claimed to have proved, that the assignment was made honestly and in good faith, and not for the purpose of defrauding the creditors of *Stevens ;* which the defendants denied. The plaintiff also claimed, that if the horse and skins in question were taken, or if any of them had gone back into and remained in the possession, use and controul of *Stevens*, as claimed by the defendants, this furnished only presumptive evidence that the assignment was originally fraudulent ; and that if the assignment was proved to be originally honest, and made in good faith, this presumption was thereby repelled and done away ; and the plaintiff requested the court so to instruct the jury.

On this subject the court charged the jury, that if, after the

*Hartford,*
*June, 1842.*

*Osborne*
*v.*
*Tuller.*

assignment, the horse and skins in question went back into and remained in the possession of *Stevens,* this furnished presumptive evidence that the assignment was, in respect of such property, or such of it as had so gone back into and remained in his possession, fraudulent ; and that it would be conclusive on that point, unless the plaintiff, on his part, had furnished reasons satisfactory to the jury, for such subsequent possession and use of the property, and proved to them that the assignment was made honestly and in good faith, and not for the purpose of defrauding the creditors of *Stevens,* in which case the presumption arising from such subsequent use and possession, would be repelled and overcome ; but that if the assignment was not made honestly and in good faith, but to defraud the creditors of *Stevens;* or if *Stevens* was, after the assignment of the property, suffered, by the plaintiff, to have or retain possession thereof, or any part thereof, not for a special and particular purpose, and for a certain period of time, but without any qualification as to purpose, or limitation as to time ; or if, when the assignment was made, there was any secret trust in the plaintiff for the use or benefit of *Stevens;* or if the plaintiff allowed *Stevens* to hold himself out to the world as the owner of the property, or any part thereof; then, as to such property, the assignment was, in law, fraudulent and void.

The jury returned a verdict for the plaintiff; and the defendants moved for a new trial for a mis-direction.

*Hungerford,* in support of the motion, contended, 1. That the possession and use of personal chattels, by the assignor, after the assignment, is presumptive evidence of fraud. This position has not been controverted since *Twyne's* case. It is distinctly recognized by the charge.

2. That this presumption can be repelled only by some reason which the *law* deems sufficient. *Edwards* v. *Harben,* 2 *Term Rep.* 587. *Sturtevant* & al. v. *Ballard,* 9 *Johns. Rep.* 337. 339. *Patten* v. *Smith* & al. 5 *Conn. Rep.* 201. *Swift* & al. v. *Thompson,* 9 *Conn. Rep.* 63. Consequently, the sufficiency of the reason, upon a given state of facts, is to be decided by the court, and is not to be left to the jury.

3. That no such reason appeared in this case.

In the first place, that the assignment was *bona fide* in point

of fact, is not such a reason. *Mills* v. *Camp*, 14 *Conn. Rep.* 225. To admit of this explanation, would be to subvert the *policy* of the rule.

Secondly, the saving of expense to the creditors in the keeping of the horse, is not such a reason.

Thirdly, the occasional use of the horse, by the plaintiff, his offering it for sale, &c., did not repel the presumption of fraud. The change of possession must be substantial and *exclusive*, and not concurrently with the assignor. 2 *Kent's Com.* 518. (3rd. ed.) *Paget* & al. v. *Perchard* & al., 1 *Esp. Ca.* 205. *Wordall* v. *Smith* & al., 1 *Campb.* 333.

The reasons which have been deemed sufficient for this purpose, are, either where it is physically impossible to change the possession—as in the case of a ship at sea—or where it would cause material damage or destruction of the property—as hides in a vat, or paper in a mill, at a certain period of the process of manufacture ; and there a change of possession is dispensed with, only while the impossibility, physical or practical, continues. 14 *Conn. Rep.* 226.

*F. Parsons*, contra, after remarking, that the rules formerly adopted relative to fraudulent conveyances of personal property, had been greatly relaxed and modified, in *England* and this country, for a series of years ; and if the old rule has ever been attempted to be enforced, it has, by the next decision, been abrogated ; contended, 1. That it has become settled law, in *Connecticut*, as well as in *New-Hampshire*, *Maine, Massachusetts* and *New-York*, that the retaining of possession by the vendor, is only *prima facie* evidence of fraud, and capable of explanation. Hence, two questions arise : First, does the vendee hold the property in trust, either secret or express, for the benefit of the vendor ? Secondly, did the vendee suffer the vendor to hold himself out to the world as the owner of the property, and thereby enable him to obtain *a false credit*? In either case, the assignment is fraudulent and void ; otherwise, not.

2. That when an assignment is made under the act of 1828, stronger proof will be required to raise the presumption of fraud, than in other cases. The law, as applicable to an assignment under that act, is, that if an assignee refuses to accept the trust, and the creditors omit, within a reasonable

*Hartford,*
*June, 1842.*

Osborne
*v.*
Tuller.

time, to obtain the appointment of a substitute, the property is liable to attachment. But if a trustee accepts, and gives bonds, &c., as the law requires, no presumption of fraud arises from the fact, that the property remains afterwards in possession of the assignor. If such trustee, however, suffers the assignor to hold himself out to the world as the owner of the property, and thereby obtains a false credit, the property is liable to attachment. But, in that case, the property having gone out of his hands, by his own fault, the assignee is liable on his bond for the value of it, to the general creditors.

3. That, in either case, the question of fraud is a matter of *fact,* to be settled by the jury. *Swift* v. *Thompson,* 9 *Conn. Rep.* 63. *Toby* v. *Reed,* 9 *Conn. Rep.* 216. *Carter* v. *Watkins,* 14 *Conn. Rep.* 240. *Smith* v. *Acker,* 23 *Wend.* 653. *Chitt. Cont.* 411. n. (5th ed.)

4. That the honesty of the transaction in this case, in relation to the property in question, is manifest. It was claimed and proved, that the assignee always held, and butchered and sold the sheep ; that the horse was held by the assignee, or by *Gleason,* his agent, until all the other personal property had been disposed of, and was used to transport that property to market ; that repeated attempts had been made to sell the horse ; and that it did not go into the assignor's possession at all, until he had begun to butcher for *Wells,* and then only for a short time and a special purpose ; and that all this had become a matter of perfect notoriety throughout all that region. Besides, if the assignee was committing a fraud in this transaction, it was a fraud *upon himself;* as he could not avoid being held responsible for the horse.

CHURCH, J. Perhaps there has been no question more frequently discussed, and certainly none discussed with less satisfactory results, than the primary one presented by this motion, *viz.* how far, and in what sense, the retention of possession of personal property by the vendor, after a sale, is evidential of fraud, or of a secret trust for his benefit ?

We have no disposition here, to examine all the cases which have been reported upon this prolific subject of controversy. By doing so, we should have no hope of reconciling them. Some of them are irreconcileable. And still we think the

*Hartford,*
*June, 1842.*

Osborne
*v.*
Tuller.

discrepancy in the best considered cases, has not been as great as the courts and the bar have supposed.

The case referred to, as the leading one on this subject, and yet not the earliest, is *Edwards* v. *Harben, 2 Term Rep.* 587. The language of the court in that case is, " that if possession does not accompany and follow the deed, it is, *in case of an absolute deed,* not mere evidence of fraud, but fraud *per se.*" And they say also, that " this was always the law."

That the court did not intend, by the language used, to determine, that the retention of possession by the vendor was *conclusive,* unexplainable evidence of fraud,—or rather, that it was a fraud, instead of being a legal presumption of fraud,— in all cases, is evident from several considerations. The counsel of the plaintiff did not claim the law to be so ; and he refers to the case of a sale of a ship at sea. The court also make the question to depend upon whether the want of immediate possession be consistent with the deed ; and they cite several cases to show, that a sale may be good, though not accompanied by possession in the vendor. We understand the doctrine of that case to be, that the want of immediate and accompanying possession must be *legally consistent* with the deed ; or, that such sale is void, unless accompanied by such facts and circumstances, as, in *presumption of law,* will show that the retention of possession is consistent with the sale. If this be so, then it is evident, that to show or prove to a jury, that a sale is *bona fide,* and made upon good and full consideration, does not relieve the case from the infirmity or legal presumption of fraud, because this does not explain, nor pretend to explain, the possession of the goods sold, and why this possession has not gone along with the sale. This, we believe, is the doctrine of all the earlier *English* cases ; and we doubt whether the courts of *Great-Britain* have intended essentially to depart from it, in modern ones. *Bucknal* v. *Roiston, Prec. Ch.* 286. 1 *Ves.* 360. *Rice* v. *Serjeant,* 7 *Mod.* 37. *Paget* v. *Perchard,* 1 *Esp. Ca.* 205. *Wordall* v. *Smith,* 1 *Campb.* 333. *Jezeph* v. *Ingram,* 8 *Taun.* 838. S. C. 1 *Moore* 189.

The courts in the state of *New-York* have furnished their full proportion of decided cases on this question ; and, if we mistake not, have, until very recently, recognized the principle before advanced, as being the law of *England* and of that

*Hartford,*
*June, 1842.*

*Osborne*
*v.*
*Tuller.*

state. The case of *Sturtevant* & al. v. *Ballard,* 9 *Johns.* *Rep.* 337., was decided in 1812, and well considered; and that case has been cited and referred to, with approbation, by the courts in that state, as well as in this, in nearly all the cases which have been subsequently discussed, in which this question has been involved. The doctrine of the case is, that " there must be some sufficient motive, of which the court is to judge, for the non-delivery of the goods, or the *law will still* presume the sale to have been made with a view to delay, hinder or defraud creditors. A delivery of possession is so much of the essence of the sale of chattels, that an agreement to permit the vendor to keep possession, is an extraordinary exception to the usual course of dealing, and requires a satisfactory explanation." It is, as we have before remarked, the retention of the possession by the vendor, which requires satisfactory explanation; and this certainly is not done, by showing the *bona fides* of the sale. The subsequent cases of *Ludlow* v. *Hurd,* 19 *Johns. Rep.* 218. *Jennings* v. *Carter,* 2 *Wend.* 446. *Archer* v. *Hubbell,* 4 *Wend.* 514. *Collins* v. *Brush,* 9 *Wend.* 189. *Gardner* v. *Adams,* 12 *Wend.* 296. *Doane* v. *Eddy,* 16 *Wend.* 523. *Randall* v. *Cook,* 17 *Wend.* 54. *Stoddard* v. *Butler,* 20 *Wend.* 507. *Beekman* v. *Bond,* 19 *Wend.* 444., all, more or less directly, confirm this doctrine. It is true, that in a recent case of *Smith* v. *Acker,* 23 *Wend.* 653., a majority of the court of errors in the state of *New-York,* in opposition to the opinion of the chancellor, and the judges of the supreme court, held, that the retention of the possession, by the mortgagor, of personal property mortgaged, would not render the mortgage void, if it was made in good faith, and without any intent to defraud. But this decision was placed entirely upon what was believed, by the court, to be the proper construction of the revised statutes of that state, relative to this subject. And whatever, in consequence of this decision, may be hereafter holden to be the law of the state of *New-York,* it is certain, that heretofore, the overwhelming weight of authority and good sense, as shewn by the numerous cases cited, has recognized the principle, that the want of accompanying possession must be explained, by facts which will *satisfy the law,* that the sale was not fraudulent; and that this cannot be done, by proving, as a matter of fact, that the transaction was *bona fide.*

We have examined the cases in *England,* and in the state of *New-York.* We might refer to others in *Pennsylvania,* and in the supreme and district courts of the *United States,* affirmatory of the same views. But, after all, the question before us is, what is the law of *Connecticut ?* If we have taken a correct view of the case of *Edwards* v. *Harben,* 2 *Term Rep.* 586., and if the court there was justified in supposing that the doctrine of that case had been so ruled forty times in *Guildhall,* and that the law had always been so held, we cannot be at a loss to know what is the common law, and, of course, what is our own law, unless the courts of this state have introduced into our system a new and variant principle. An examination of our own cases will determine this.

In the case of *Woodbridge* v. *Perkins,* 3 *Day,* 364., this question was very fully discussed by counsel; and although the court did not go fully into the consideration of it, yet they say, that " it is a *rule of law,* that where there is a sale of personal property, the possession of such property *must be changed* from the vendor to the vendee, or it will be liable to the creditors of the vendor."

And in *Burrows* v. *Stoddard,* 3 *Conn. Rep.* 431., the court does not intimate, that a retention of possession by a vendor can be satisfactorily explained, only by proving the transaction or sale to have been, in point of fact, honest. " The question," say the court, "is, whether this presumption of fraud can be repelled, by *any evidence whatever.*" No case, that we know of, unless, possibly, the case of *Hamilton* v. *Russell,* 1 *Cranch,* 309., has gone so far as to hold, that the legal presumption of fraud cannot be explained. As we have seen before, the case of *Edwards* v. *Harben* does not. The doubt and the confusion on this subject, have arisen from the language of the courts, when speaking of the *manner in which* this legal presumption can be repelled. And this doubt arises from what the court say in the case of *Burrows* v. *Stoddard,* as it does from the same language used by other courts in other cases. " It seems to me," says the judge, " that whether a conveyance or attachment is fraudulent or not, is, necessarily, a question of fact, to be submitted to the jury." And this position is unquestionably true, if understood as explained

*Hartford,*
*June, 1842.*

*Osborne*
*v.*
*Tuller.*

by the same court in *Toby* v. *Reed*, 9 *Conn. Rep.* 216., the jury acting under the direction of the court.

In *Patten* v. *Smith*, 4 *Conn. Rep.* 450., the court say, that the goods having been left in the possession of the mortgagees, furnishes a strong badge of fraud, " and even *conclusive evidence* of it, unless explained by the most satisfactory reasons." What is to be explained,—the character of the mortgage, and whether it was *bona fide*, or not ? No; the continuing of the possession of the goods in the hands of the mortgagor, must be explained. As we have before remarked, the *law* must be satisfied, by the reasons given in explanation, as well as the jury persuaded of the integrity of the transaction.

In the same case, as reported 5 *Conn. Rep.* 196., the court go very fully into an examination of the reasons upon which the doctrine is based, and, in adverting to the leading case of *Sturtevant* v. *Ballard*, 9 *Johns. Rep.* 337., say, it furnishes a decisive confirmation of the general rule ; and the reasoning of the supreme court of the state of *New-York*, is fully adopted.

Then came the case of *Swift* v. *Thompson*, 9 *Conn. Rep.* 63., by which, it was supposed, the law of *Connecticut* on this subject was settled, and discussion put at rest. The court, referring to the clear and explicit doctrine of the cases of *Sturtevant* v. *Ballard*, 9 *Johns. Rep.* 337., and *Patten* v. *Smith*, 5 *Conn. Rep.* 196., say : "This has been the law of *Connecticut*, for the last forty years, if not from the beginning. It is not according to the course of the court to call this a fraud *per se*, and to direct the jury to find the sale void, but the question is submitted to the jury with instructions," &c. The same explanation is given in *Toby* v. *Reed*, 9 *Conn. Rep.* 216.

The rule established in these cases, was followed, by the judge at the circuit, in the case of *Mills* v. *Camp*, 14 *Conn. Rep.* 219. He submitted the questions of fact to the jury, and instructed them as to what *the law demanded*, as a sufficient excuse for not removing the property attached. This course was sanctioned, by this court, as being in conformity with the established principles of our law. And with much truth it is said, that the object of requiring a transfer of possession, is, to prevent fraud. " It is not a rule of evidence only, but of policy." And the reasons why it is so, and why it ought to be so, are clearly given.

In the case of *Carter* v. *Watkins*, 14 *Conn. Rep.* 245., de-

cided by this court, only one week after the decision of *Mills* v. *Camp*, it cannot be supposed the court intended to impugn any of the doctrines of the former case :—indeed, we know they did not.   The only question presented or discussed in the case, was, whether the reasons urged in explanation and excuse of the neglect of accompanying possession, were *legally* sufficient to repel the legal presumption of fraud. And the court held expressly, that although an adequate price was paid, and although the property was left, by the vendor, for the purpose of being manufactured, these circumstances did not furnish such an explanation as the *law would pronounce* satisfactory—thereby clearly recognizing the principle of former cases, that although the facts urged in explanation are to be submitted to, and ascertained by the jury, their legal effect is to be determined by the court.

It becomes necessary, therefore, to determine, whether in the present case, such facts appeared, or were claimed to exist, as would furnish a legal excuse for permitting the property in controversy here, to remain in the possession of the assignor or vendor ?

It will be recollected, that the court submitted the question of *bona fides* to the jury, and also whether there was in fact a secret trust, and whether the assignee permitted the assignor or vendor to hold himself out to the world as the owner of the chattels in dispute, notwithstanding the assignment.   But the defendants claimed further, that under the circumstances detailed in the motion, if the assignee permitted the goods in dispute either to remain in possession of the assignor, or to return to his possession after the assignment, without some other and legal reason than any which appears, the assignment, as to such chattels, was void.   And this would have been our opinion, in conformity with the principles before advanced, had this been the case of an ordinary sale or assignment for the benefit of creditors.

This assignment was made under the provisions of the statute in addition to an act against fraudulent conveyances, passed in 1828.   By this law, the precise duty of an assignee is prescribed : the deed of assignment is to be recorded, like a last will and testament, upon the records of the court of probate ; and thus full notoriety and publicity is given to the transaction.   An inventory of every article of estate assigned

*Hartford,*
*June, 1842.*

Osborne
*v.*
Tuller.

is required to be made out and lodged upon the files of the court; the whole process, from its commencement to its consummation, is a proceeding in court, and to which all the creditors of the insolvent are parties, and for whose sole benefit the proceedings are had. An assignment under this statute is something more than a mere sale or assignment *inter partes*,—it is a public legal proceeding, and the assignee holds a relation to the estate assigned, very nearly such as an executor or administrator holds to the property of a deceased person;—he executes a bond as a security to the creditors for whom he acts; and with such a bond, it is difficult to see how such an assignment can be merely colourable. We believe, therefore, that these facts do afford a sufficient legal excuse for the want of accompanying possession by the assignee, and have the legal effect of removing from the transaction any presumption of fraud growing out of the want of possession. We do not think, that the statute of 1837, giving authority to trustees to employ the assignor as their agent, with the assent of the court of probate, affects this question; nor do we intimate, that if the assignor is permitted, without the sanction of the statute of 1837, to hold himself out to the world as the owner of the estate assigned, that the charge of fraud could not be sustained. But we believe that the legal presumption of fraud, arising from the continuing possession of the assignor, is repelled, by proof that the assignment was made under the statute of 1828, and that the trustee has complied with the requirements of that law, unless he has permitted the assignor to treat the whole as void, by holding himself out to the public as being the real owner of the estate assigned. And therefore, we do not advise a new trial.

In this opinion the other Judges concurred.

New trial not to be granted.